REFRIGERATED TRANSPORT CO., INC., Petitioner,

v.

The INTERSTATE COMMERCE COMMISSION and The United States of America, Respondents.

No. 81–7333.

United States Court of Appeals, Eleventh Circuit.

April 19, 1982.

Serby & Mitchell, P. C., Bruce E. Mitchell, Alan E. Serby, Atlanta, Ga., for petitioner.

William H. Shawn, Washington, D. C., for intervenor Motor Carrier Lawyers Ass'n.

Michael J. Ogborn, Lincoln, Neb., for intervenor Green Field Transport Co., Inc.

Benjamin R. Civiletti, Atty. Gen., John J. Powers, III, Mark Del Bianco, U. S. Dept. of Justice, Charles A. Stark, I.C.C., Off. of the Gen. Counsel, Washington, D. C., for I.C.C.

Before MORGAN, JOHNSON and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

Refrigerated Transport Company (Refrigerated) petitions for review of a deci-

sion of the Interstate Commerce Commission (ICC) in Docket No. MC–119,741 (Sub-No. 275)F, Application of Green Field Transport Co. (Green Field), Extension—General Commodities, United States. The ICC granted the application in part, issuing motor common carrier authority to transport food and related commodities, over irregular routes, between all points in the United States. Refrigerated contends that the Commission abused its discretion in refusing to grant an oral rehearing on Refrigerated's protest of Green Field's application, and that the grant of the certificate of operating authority was inconsistent with the policy of the Motor Carrier Act of 1980 and not supported by substantial evidence. Finding no reversible error, we affirm.

Green Field filed its application on August 20, 1980, requesting authority to transport general commodities between all points in the United States.[1] On September 2, 1980, the ICC published the application at 45 Fed.Reg. 58,255, 58,256 (1980), noting its preliminary finding that Green Field had met its burden of proof under § 5(a)(3) of the Motor Carrier Act of 1980, 49 U.S.C. § 10,922(b).[2] Some 36 carriers, including Refrigerated, filed protests and evidence in opposition to the application. By decision served December 4, 1980, Review Board 3 denied the application in its entirety.[3] On appeal, the ICC reversed in part. 132 M.C.C. 485 (1981).[4] The ICC agreed that Green Field had failed to make a prima facie case for nationwide general commodities authority, but that it had shown a need for nationwide service to the food processing and food distribution industry. It therefore granted the latter authority.[5] Refrigerated thereafter filed a petition for further administrative review, requesting

---

1. The application was filed after the effective dates of the Motor Carrier Act of 1980, Pub. L.No. 96–296, 94 Stat. 793 (1980), and the ICC's Interim Rules Governing Applications for Operating Authority, Ex Parte No. 55 (Sub-No. 43), 45 Fed.Reg. 45,534 (1980). No party to this appeal has challenged the application of the Motor Carrier Act or the Interim Rules. Because we affirm, it is not necessary to consider whether our decision might be affected by the Final Rules, 364 I.C.C. 508, 45 Fed.Reg. 86,771 (1980).

2. Forty-nine U.S.C. § 10,922(b)(1) provides:

   (b)(1) Except as provided in this section, the Interstate Commerce Commission shall issue a certificate to a person authorizing that person to provide transportation subject to the jurisdiction of the Commission under subchapter II of Chapter 105 of this title as a motor common carrier of property if the Commission finds—

   (A) that the person is fit, willing, and able to provide the transportation to be authorized by the certificate and to comply with this subtitle and regulations of the Commission; and

   (B) on the basis of evidence presented by persons supporting the issuance of the certificate, that the service proposed will serve a useful public purpose, responsive to a public demand or need;

   unless the Commission finds, on the basis of evidence presented by persons objecting to the issuance of a certificate, that the transportation to be authorized by the certificate is inconsistent with the public convenience and necessity.

   Refrigerated does not dispute the ICC's finding that Green Field was "fit, willing and able" to provide transportation under the authority granted. It only contends that based on the evidence, Green Field failed to show that the issuance of the certificate would serve a useful public purpose under subsection (b)(1)(B).

3. A review board is a panel of three ICC employees delegated initial decision-making authority pursuant to 49 U.S.C. § 10,305.

4. Refrigerated complains that it was not properly served with notice of Green Field's administrative appeal. It does not contend here, however, that its ability to present its case on appeal before the ICC was thereby prejudiced, so we do not address the issue. We note further that failure of proper notice is not unknown in such proceedings. *See* Southwest Express Co., Common Carrier Applic., No. MC–152,362 (Sub-No. 1)F (May 27, 1981) (unpublished).

5. The certificate provided for transportation of

   *Food* and *related products*, including all commodities dealt in by manufacturers, processors, and wholesale and retail distributors of food for human and animal consumption and beverages, between all points in the United States.

   Other aspects of the certificate concerning other products and their geographic limitations are not at issue on this appeal.

that the case be reopened for an oral hearing. The petition was denied, and this appeal followed.

Green Field submitted two verified written statements in support of its application, by its executive vice president and an employee of Archer Daniels Midland Company (ADM), a shipper supporting a grant of the authority. As required by the ICC's modified procedure, these were filed with the application on August 20, 1980. *See* Interim Rule 247(A)(e), 45 Fed.Reg. 45,534, 45,540 (1980). Green Field's vice president described the scope of its current operations in his supporting statement. He alleged that Green Field operates 97 power units and 131 trailers, 80% of which are refrigerated, and that Green Field's gross revenues in 1979 were $7,160,560.00. A compilation of Green Field's 150 existing certificates of public convenience and necessity discloses that Green Field holds extensive nationwide authority for the transportation of food and related products. It is authorized to originate such transportation in 27 states, and to deliver the commodities in all states except Alaska and Hawaii. Several of its certificates authorize nationwide service, but have "plantsite" restrictions, limited to the facilities of named shippers.

The ADM witness stated that ADM is the largest agricultural processing company in the United States, operating 135 plants throughout the country. He identified 13 plants in 12 states as "major" facilities, and listed 70 other plants, as representative origins and destinations for its traffic in the District of Columbia and all states except New Mexico, Alaska and Hawaii. ADM's primary products are foodstuffs, principally grain-related, many of which must be transported in refrigerated trailers. The witness also expressed ADM's need for a carrier with authority to handle extensive inter-plant movements for purposes of inventory control, citing as an example frequent shipments from its Decatur, Illinois, plant to its Denver, Colorado, facility. He also noted ADM's "acquisitions, existing plant expansions, and new plant construction," but did not identify the locations of new facilities. He further asserted that no carrier was

available which held all the authority sought by Green Field, and proposed that ADM would tender Green Field 72 to 78 truckloads per month in the event the ICC granted the application.

In its opposition, Refrigerated, through a verified statement of its vice president for sales, asserted that a grant of Green Field's application would divert a large amount of traffic from Refrigerated, including "important backhaul traffic which RTC has painstakingly developed over the years in order to conduct the most balanced, profitable operations." Refrigerated submitted no evidence directly impeaching Green Field's case in chief, but relied upon the purported insufficiency of Green Field's evidence in its argument.

In reversing the review board's denial of the application, the ICC began by noting that "the extent of an applicant's existing operations and authority, and the extent of the authority required to meet the public needs or demands for additional service shown by the testimony of shippers, other witnesses, and/or the applicant itself must ultimately be considered together, not separately, in judging whether a *prima facie* case has been made." (Footnote omitted.) The ICC found that Green Field's existing authority "represents authority to serve the food processing and food distribution industries nationwide," and that "the firms and the needs it can now serve in these industries are undoubtedly broadly representative of the firms and the needs of these industries as a whole." It then stated that it "need not consider what breadth of authority this shipper's [ADM's] testimony might otherwise justify, since it here serves simply to strengthen the case for nationwide food industry authority without suggesting a need for anything broader." The ICC then found "that the evidence accompanying the application, taken together with the findings on which applicant's prior certificates were based, establishes a threshold case" for the issuance of a nationwide food industry certificate. Turning to the protestants' evidence, it concluded that there was no showing that the grant of

authority to Green Field would be inconsistent with the public convenience and necessity: "At most they have demonstrated a possibility that some of their existing traffic and revenues will be diverted by the applicant." Since this evidence is facially insufficient to rebut a prima facie case, 49 U.S.C. § 10,922(b)(2)(B), it granted a certificate for nationwide foodstuffs authority.

■ Refrigerated first maintains that the denial of a rehearing with oral testimony deprived it of due process and constituted an abuse of discretion. This argument is without merit. When notice of Green Field's application was published in the Federal Register, the ICC noted that "we find, preliminarily, that each applicant has demonstrated its proposed service warrants a grant of the application under the governing section of the Interstate Commerce Act." 45 Fed.Reg. 58,255, 58,255 (1980); see also Lenertz, Inc., Extension—General Commodities, No. MC–142,715 (Sub-No. 113)F (May 26, 1981) (unpublished). Refrigerated was entitled to receive a copy of the application upon payment of ten dollars. Interim Rule 247(A)(1)(3), 45 Fed.Reg. at 45,541. Green Field's initial application contained its existing certificates of operating authority, its description of the scope of its operations, and ADM's statement, upon which the ICC ultimately relied in framing the grant of authority. The Supreme Court has held:

> A party is entitled, of course, to know the issues on which decision will turn and to be apprised of the factual material on which the agency relies for decision so that he may rebut it. Indeed, the Due Process Clause forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation .... But these salutary principles do not preclude a factfinder from observing

strengths and weaknesses in the evidence that no party identified.

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 288 n. 4, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *see also Bonney Motor Express, Inc. v. United States*, 640 F.2d 646, 650 (Former 5th Cir. 1981). Refrigerated had unequivocal notice that both the scope of Green Field's operations and ADM's need would be issues in the public need determination.[6]

Refrigerated next claims that the order is infirm on the merits. An agency determination should be set aside if it is "arbitrary, capricious, . . . [or] unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). "If the agency considers the relevant factors and articulates a rational connection between the facts found and the choice made, the decision is not arbitrary or capricious." *Watkins Motor Lines, Inc. v. Interstate Commerce Commission*, 641 F.2d 1183, 1188 (Former 5th Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *Refrigerated Transport Company v. Interstate Commerce Commission*, 616 F.2d 748, 751 (5th Cir. 1980). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

■ To justify the authority sought, it is necessary to find "that the service proposed will serve a useful public purpose, responsive to a public demand or need." 49 U.S.C. § 10,922(b)(1)(B); *see supra* note 2. Taking as a whole the evidence of Green Field's

6. Refrigerated's argument could be read as a complaint that the ICC took official notice of findings from prior proceedings, and that it had notice that the Commission would do so only after the record was closed. It goes on to argue only that it had no notice that the scope of Green Field's operations would be an issue, however. As we note in the text, Green Field's application clearly raised this issue. The facts which Refrigerated now seeks to raise would have been required to meet the evidence already in Green Field's application. Any error in taking official notice was accordingly harmless to Refrigerated's ability to identify the issues which it would be required to address in the modified proceedings.

existing certificates and operations and Archer Daniels Midland's need for service, we cannot say that the decision is unsupported by substantial evidence. Green Field was not required to demonstrate a need for service at every point within the territory requested, but only at a representative number of points. *E.g., Miller Transporters, Inc. v. United States,* 594 F.2d 463, 467 (5th Cir. 1979). "We decline to play a numbers game" to determine whether the evidence of public need at the points represented by Green Field's existing authorities and ADM's facilities is enough to warrant service at the other points covered by the new authority. *See id; see also Mississippi Public Service Commission v. Interstate Commerce Commission,* 650 F.2d 551 (Former 5th Cir. 1981); *State of Texas v. United States,* 642 F.2d 87 (Former 5th Cir. 1981).

■ Finally, Refrigerated urges that the ICC's decision is contrary to the policy of the Motor Carrier Act of 1980. This contention, too, must be rejected. The weighing and balancing of competing interests to arrive at a determination of "a useful public purpose, responsive to a public demand or need" is entrusted to the ICC. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 219, 293–94, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). That body articulated a clear basis for its decision, as required by the statute. "We cannot say that the balance it struck was arbitrary or contrary to law." *Id.* at 294.

The order of the ICC is accordingly

AFFIRMED.