**STEERE TANK LINES, INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMIS-SION and United States of America, Respondents.**

No. 81–4261
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 7, 1982.

Hugh T. Matthews, Dallas, Tex., for petitioner.

Kathleen V. Gunning, I. C. C., Robert J. Wiggers, Robert B. Nicholson, Antitrust Div., Dept. of Justice, Washington, D. C., for respondents.

Jack Coke, Jr., Dallas, Tex., David P. Christianson, Los Angeles, Cal., for intervenors respondents VTS Trucking.

Before RUBIN, SAM D. JOHNSON and GARWOOD, Circuit Judges.

PER CURIAM:

Petitioner Steere Tank Lines, Inc. (Steere) seeks review of an Interstate Commerce Commission order granting intervenor VTS Trucking (VTS) a certificate of public convenience and necessity to operate as a common carrier over irregular routes between points in thirteen western and southwestern states. We affirm the ICC's license grant.

On November 12, 1980, VTS applied for a certificate of public convenience and necessity authorizing it to operate as a motor common carrier to transport petroleum and

petroleum products between points in Washington, Oregon, California, Nevada, Idaho, Montana, Wyoming, Utah, Colorado, Arizona, New Mexico, Oklahoma and Texas. Several carriers already licensed to operate in the proposed territory opposed the application.[1] At least two of the carriers, including Steere, argued, inter alia, that VTS had not shown itself to be properly equipped to provide the proposed service because it had only one terminal facility and a limited number of trucks. The application was granted over the objections of the opposing carriers by order served March 12, 1981. Only Steere sought administrative review of the order. The review was denied and Steere appeals to this Court. It claims that the Commission erred in finding VTS fit, willing, and able to perform the granted service because VTS "admittedly does not presently have the terminals or the motor vehicle equipment with which to perform that service."

By passage of the Motor Carrier Act of 1980, Congress modified past provisions of the Interstate Commerce Act for entry into regulated transportation by motor vehicle. This Court's recent decision in *American Trucking Associations, Inc. v. ICC*, 659 F.2d 452 (5th Cir. 1981) held, however, that the Act retains the traditional requirements as to an applicant's fitness, willingness, and ability to provide the service for which authority is sought. Whether an applicant has the proper equipment to provide that service is an important consideration in determining whether the requirements have been met. *American Trucking* at 465, 473.[2]

Steere contends that the Review Board found VTS did not presently have the equipment to perform the proposed service (and that there is no evidence that VTS intended to purchase any additional equipment), but, that such a finding was considered immaterial. The relevant portion of the Board's opinion is as follows:

Finally, protestants challenge applicant's fitness to perform the proposed service noting that applicant operates only one terminal. However, applicant's present lack of terminals or equipment is not in and of itself reason to deny authority to provide the considered service in view of the demonstrated need for it. Compare *Graham Contract Application*, 73 MCC 769, 771 (1957) . . .

*We find* :

Performance by applicant of the service described in the appendix will serve a useful public purpose, responsive to public demand or need. Applicant is fit, willing, and able properly to perform the granted service and to conform to the the the requirements of Title 49, Subtitle 4, U.S.C., and the Commission's regulations. . .

The I. C. C. denies that the Board found VTS ill equipped to perform the proposed service. It gives a different interpretation of the Board's language. It claims that the Board was merely noting that a present lack of equipment to meet all potential demand within the involved territory in and of itself is no reason to deny authority in view of the demonstrated need for the service. The *Graham* case, cited by the Board, while not direct authority for this proposition, provides some support for the I. C. C.'s position. In *Graham* the Commission held a carrier's lack of terminals is not to be considered conclusive of his ability to meet the shipper's requirements. Hence, the Board could well have meant that a large number of terminals was not necessary to perform the contemplated service. While the question presented here is a close one, we find the Board's conclusion that VTS is fit, willing and able to perform the proposed service, is not based on the erroneous assumption that a lack of equipment to perform that service is immaterial.

1. The opposing carriers were Groendyke Transport, Inc., John Bunning Transport Company, Inc., North Northern Tank Lines, Steere Tank Lines, Inc. and Ward Transport, Inc.

2. It may be enough that the applicant is willing and has the financial resources to obtain the equipment since it would not be prudent business practice for a carrier to open new terminals and buy additional equipment before it knows whether the authority it seeks will be granted.

■ The next issue confronting us is whether the Board's conclusion is supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *See, Refrigerated Transport Company, Inc. v. I.C.C.*, 616 F.2d 748, 751 (5th Cir. 1980).

VTS's application states that it already transports petroleum and petroleum products in the thirteen-state territory for its corporate parent, McAuley Oil Company, pursuant to the intercorporate hauling provisions of 49 U.S.C. Section 10524(b). This provision allows VTS as a member of a corporate family to transport the property of other corporate family members without obtaining operating authority from the Commission. VTS may not, however, transport any portion of a load over which McAuley's customers have control. Because of this restriction, VTS claims that its vehicles often move only partially filled orders. Its purpose in requesting common carrier authority, therefore, is to round out its operations and provide a full and flexible service responsive to the needs of McAuley and the supporting shippers, many of whom are McAuley's customers.

In addition, VTS presented evidence that it owned sixteen tractor trailers "specifically designed to properly handle the transportation requirements of the supporting shippers," and that it already uses this equipment to carry petroleum and petroleum products under its intercorporate hauling authority. It states that it stores and maintains the equipment at its terminal in Signal Hill, California, and at various customer facilities and product source facilities (thus, eliminating the need for additional terminals). VTS claims that it employed this operational procedure in transporting waste products in government traffic nationwide and has found it to be effective and efficient. In addition, the supporting shippers stated that they believed VTS was able to meet their needs. They also indicated that they had reviewed and were satisfied with VTS's equipment.

Steere contends that unless VTS can demonstrate that it is fit, willing, and able to transport petroleum and petroleum products for a representative amount of the total traffic in the proposed territory that it cannot receive common carrier certification. It claims that the traffic available from the supporting shippers is only a very small portion of that total. Steere's argument, however, is based upon an erroneous interpretation of the common carrier's duty. A common carrier is free to carve out as large or as small a nitch as it feels appropriate. *Pennsylvania Railroad v. Puritan Coal Mining Co.*, 237 U.S. 121, 133, 35 S.Ct. 484, 488, 59 L.Ed. 867 (1921). Its duty is only to "serve all, up to the *capacity of his facilities* without discrimination and for reasonable pay." *Michigan P.U.C. v. Duke*, 266 U.S. 570, 577, 45 S.Ct. 191, 193, 69 L.Ed. 445 (1925). While the provisions of the Motor Carrier Act may well require that no material type of the transportation authorized by the certificate be beyond the carriers fitness, willingness, and ability, there is no requirement that the carrier be able, quantitatively, to perform all or any substantial part of the transportation in all covered areas.

Hence, we believe that VTS has presented substantial evidence from which the Review Board could conclude that VTS is fit, willing, and able to perform the granted service.

AFFIRMED.