**REFRIGERATED TRANSPORT CO., INC., and Coastal Transport & Trading Co., Petitioners,**

**v.**

**The INTERSTATE COMMERCE COMMISSION and the United States of America, Respondents.**

**No. 82–8057.**

United States Court of Appeals, Eleventh Circuit.

June 16, 1983.

Serby & Mitchell, Alan E. Serby, Atlanta, Ga., for petitioners.

John Broadley, Gen. Counsel, Kathleen Sollar, Asst. Gen. Counsel, Dennis Jeffrey Stark, I.C.C., Washington, D.C., William F. Baxter, Asst. Atty. Gen., John J. Powers, III, Susan J. Atkinson, Dept. of Justice, Washington, D.C., for respondents.

Thomas P. Kimmitt, Jr., George M. Church, Nevett Steele, Jr., Baltimore, Md., for intervenor Gornett Trans. Co., Inc.

Before HENDERSON and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an action to review and set aside the decision of the Interstate Commerce Commission in which the Commission granted Cornett Transportation Company, Inc. authority to transport food and related products in interstate commerce among eight states.

Initially, Cornett sought authority only to transport:

plastic materials or products, glass materials, products and bottles, cans suitable for use as beverage containers, and beverages, both alcoholic and nonalcoholic, liquor, in plastic and glass bottles, containers, and cans, between points in Maryland, Delaware, Virginia, North Carolina, South Carolina, New Jersey, Pennsylvania, and West Virginia.

The Commission broadened the commodities described in Cornett's request from beverages and containers to food and related products. It did this because the Commission had established "food and related products" as the appropriate commodity description for the grant of authority.

Petitioners here, two competing carriers holding national food and related products certificates, attack the validity of the Commission's order on two principal grounds: the first is that there was no proof to support the Commission's finding that Cornett was "fit, willing, and able" to provide the services certified; second, they contend there was an absence of proof establishing useful public purpose, responsive to a public demand or need for the grant by the Commission.

Petitioners also contend that the ICC failed properly to consider the interests of the protesting carriers and that it erred in

failing to make specific findings concerning the effect of the grant of authority as to applicable portions of the transportation policy.

The applicable provision of the Interstate Commerce Act, under which the ICC granted the certificate here follow:

*Interstate Commerce Act, Section 10922(b), 49 U.S.C. § 10922(b)*

(b)(1) Except as provided in this section, the Interstate Commerce Commission shall issue a certificate to a person authorizing that person to provide transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title as a motor common carrier of property if the Commission finds—

(A) that the person is fit, willing, and able to provide the transportation to be authorized by the certificate and to comply with this subtitle and regulations of the Commission; and

(B) on the basis of evidence presented by persons supporting the issuance of the certificate, that the service proposed will serve a useful public purpose, responsive to a public demand or need;

unless the Commission finds, on the basis of evidence presented by persons objecting to the issuance of a certificate, that the transportation to be authorized by the certificate is inconsistent with the public convenience and necessity.

(2) In making a finding under paragraph (1) of this subsection, the Commission shall consider and, to the extent applicable, make findings on at least the following:

(A) the transportation policy of section 10101(a) of this title; and

(B) the effect of issuance of the certificate on existing carriers, except that the Commission shall not find diversion of revenue or traffic from an existing carrier to be in and of itself inconsistent with the public convenience and necessity.

\*　　\*　　\*　　\*　　\*　　\*

The National Transportation Policy referred to above follows:

*Interstate Commerce Act, Section 10101, 49 U.S.C. § 10101*

(a) Except where policy has an impact on rail carriers, in which case the principles of section 10101a of this title shall govern, to ensure the development, coordination, and preservation of a transportation system that meets the transportation needs of the United States, including the United States Postal Service and national defense, it is the policy of the United States Government to provide for the impartial regulation of the modes of transportation subject to this subtitle, and in regulating those modes—

(1) to recognize and preserve the inherent advantage of each mode of transportation;

(2) to promote safe, adequate, economical, and efficient transportation;

(3) to encourage sound economic conditions in transportation, including sound economic conditions among carriers;

(4) to encourage the establishment and maintenance of reasonable rates for transportation without unreasonable discrimination or unfair or destructive competitive practices;

(5) to cooperate with each State and the officials of each State on transportation matters;

(6) to encourage fair wages and working conditions in the transportation industry; and

(7) with respect to transportation of property by motor carrier, to promote competitive and efficient transportation services in order to (A) meet the needs of shippers, receivers, and consumers; (B) allow a variety of quality and price options to meet changing market demands and the diverse requirements of the shipping public; (C) allow the most productive use of equipment and energy resources; (D) enable efficient and well-managed carriers to earn adequate profits, attract capital, and maintain fair wages and working conditions; (E) provide and maintain service to small com-

munities and small shippers; (F) improve and maintain a sound, safe, and competitive privately-owned motor carrier system; (G) promote greater participation by minorities in the motor carrier system; and (H) promote intermodal transportation.

(b) This subtitle shall be administered and enforced to carry out the policy of this section.

This Court has held in construing this statute

It will thus be seen that the primary obligation of the applicant is to satisfy the Commission that it is fit, willing and able to provide the service and that the service proposed will "serve a useful public purpose, responsible to a public demand or need." Thereupon, the burden shifts to any protestant to persuade the Commission that "on the basis of evidence presented by persons objecting to the issuance of [the] certificate, the transportation to be authorized by the certificate is inconsistent with the public convenience and necessity."

*Baggett Transportation Co. v. United States,* 666 F.2d 524, 526 (1982), *reh. denied,* March 1, 1982.

As we also stated in *Baggett:*

The parties agree that the standard of review of the Commission's order is that described in Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706.

*Id.* at 529.

That standard is that:

[T]he reviewing court shall . . .

(2) hold unlawful and set aside agency action, findings and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.

Petitioners claim that the findings and conclusions of the Commission are unsupported by substantial evidence. We therefore turn immediately to this issue. Again, we cite *Baggett* for the proposition that the Transportation Act of 1980:

makes much easier an entry into the motor carriage business than was possible under the old law. Without reference to the legislative history, it is plain that the burden borne by a person seeking certification is now much less than formerly, when such an applicant was required to show that his entry was *required* by "public convenience and necessity." Now, the burden on the applicant is to show "that the service proposed will serve a useful purpose, *responsive* to a public demand or need." Thereafter the burden shifts to any protestant to convince the Commission "that the transportation to be authorized by the certificate is *inconsistent* with the public convenience and necessity. (Emphasis added.)

*Id.* at 527.

It is undisputed that two shippers together supported transportation of plastic materials or products, glass materials, products and bottles, cans suitable for use as beverage containers, and beverages, both alcoholic and non-alcoholic, including but not limited to soda, beer, and liquor, in plastic and glass bottles, containers, and cans, between points in the four states, Maryland, Pennsylvania, Delaware and New Jersey. The third shipper supported transportation of the same commodities between points in Maryland and the remaining four states, Virginia, West Virginia, North Carolina and South Carolina. As the Commission determined the volume of transportation in-

volved in the current operations has amounted to some 400 truckloads per year.

■ Next, we conclude that the application, with support of the shippers, warranted the Commission's determination that *as to these products,* efficient operation, both for the applicant [economy of operation] and for the shipper [possibility of reduced tariffs due to economies of operation] would serve a "useful public purpose responsive to a public demand or need." 49 U.S.C. 10922(b)(1). Such efficient operation would be achieved, so found the Commission, by removing the "radial" restriction for shipments and by permitting Cornett to carry all products identified by the Commission as within the commodity known as "food and related products."

Petitioners challenge the authority of the Commission to broaden the original application by Cornett to permit it to carry "food and related products [1]."

■ The first basis of the criticism appears to be that the act of the Commission in broadening the certificate beyond that requested by the applicant "appears to result" from the ICC's policy statement as set forth in the Standard Transportation Commodity Code which, petitioners state, has been invalidated by the Court of Appeals for the Fifth Circuit in *American Trucking Associations v. ICC,* 659 F.2d 452 (5th Cir. 1981). We do not read *American Trucking* nearly so broadly. In that case, the Court determined that an applicant protesting against the *requirement* that it automatically carry every commodity within the standard code should have the opportunity to pursue its application without such a burden being automatically imposed on it. Here, the contrary appears. Although the certificate was expanded to include commodities not requested in the original application, the applicant has persistently supported the enlarged commodity description as being within its power to perform and as

being responsive to a public need. We conclude, therefore, that mere enlargement of the authority granted the applicant is not beyond the power of the Commission, under the circumstances of this case.

The second basis of petitioners' attack is that there' is no specific evidence to the effect that Cornett was fit, willing and able to perform the granted service, to the extent that it exceeded the authorization for which it made its original request. The protesters emphasize the fact that the applicant made a showing of having only seven vehicles for their operation and that they made no showing of their ability to handle refrigerated shipments with their present equipment. On the other hand, the Commission calls our attention to a recent decision of the Court of Appeals for the Fifth Circuit in which the court stated:

> A common carrier is free to carve out as large or as small a niche as it feels appropriate. *Pennsylvania Railroad v. Puritan Coal Mining Co.,* 237 U.S. 121, 133, 35 S.Ct. 484, 488, 59 L.Ed. 867 (1921). Its duty is only to "serve all, up to the *capacity of his facilities* without discrimination and for reasonable pay." *Michigan P.U.C. v. Duke,* 266 U.S. 570, 577, 45 S.Ct. 191, 193, 69 L.Ed. 445 (1925).

*Steere Tank Lines, Inc. v. ICC,* 675 F.2d 103 (5th Cir.1982). (Emphasis in original).

The court then stated in *Steere:*

> While the provisions of the Motor Carrier Act may well require that no material type of the transportation authorized by the certificate be beyond the carrier's fitness, willingness and ability, there is no requirement that the carrier be able, quantitatively, to perform all or any substantial part of the transportation in all covered areas.

*Id.* 105.

It is beyond dispute that the applicant showed fitness, willingness and ability to

---

**1.** Petitioners have not contested the grant of authority by the Commission to Cornett to the extent that it allows Cornett to transport "con-

tainers" non-radially over the requested eight state area.

transport all commodities within the food category with the exception of any commodities requiring refrigerated equipment. There is nothing in the record that would indicate that once the certificate was issued and there was a public demand for the carrying of such commodities the applicant would not readily acquire such equipment as would be necessary to perform this transportation as well.

The certificate in this case was granted by the Commission following an appeal from a preliminary certification in which the applicant was granted the right to transport commodities within the food category on a radial delivery basis between points in the eight states. On review, a relevant part of the board's findings of fact and conclusions is as follows:

Our review of the evidence leads us to conclude that the Board's grant of authority is excessively narrow, and does not encompass all of the service shown to be needed. For example, one shipper, Pepsi Cola Bottling Company of Wilmington, Delaware requires transportation from Havre de Grace to Atlantic City, New Jersey, then to Wilmington, then back to Havre de Grace. The Board's grant of authority would not permit such transportation by applicant. Moreover, the proposed service will permit applicant to eliminate deadhead operations it has performed in hauling for its affiliated shipper, will enable it more efficiently to meet the supporting shipper's needs, and will contribute to more efficient operations. Under these circumstances, the grant of authority described in the appendix will serve a useful public purpose, responsive to a public demand or need.

Petitioners have failed to show that the proposed service will jeopardize their operations to an extent contrary to the public interest. Nor do they show that they are serving any of the supporting shippers. On balance, the benefits to be derived by the shipping public from appli-

cants providing the authorized service outweigh any harm to existing carriers. *We find on reconsideration:*

Performance by applicant of the service described in the appendix will serve a useful purpose, responsive to a public demand or need. Applicant is fit, willing, and able properly to perform the granted service and to conform to statutory and administrative requirements. This action will not significantly affect either the quality or the human environment or conservation of energy resources. An appropriate certificate should be granted.

■ We conclude the considerations which led the Commission into seeking to improve the efficiency and economy of the applicant by eliminating radial limitations "to eliminate deadhead operations it has performed in hauling for its affiliated shipper" and to "enable it more efficiently to meet the supporting shipper's needs, and . . . contribute to more efficient operations" might well cause the Commission to enlarge the category of commodities the shipper might haul to accomplish the same ends. Both the shippers and the applicant express the need for such improvement in the economies of operation.

Finally, we consider the protestant's complaint that the Commission failed to make specific findings concerning the grant of authority as to applicable portions of the transportation policy. We dealt with such a contention by a protestant in *Baggett Transportation Co. v. United States,* 666 F.2d 524, where we pointed out that many of the requirements outlined in the transportation policy of § 10101(a), *supra,* are basically inconsistent, and that:

It is self evident, therefore, that Congress has placed upon the Commission the task of weighing and balancing all of these requirements in making its separate decisions. In some of the cases [in *Baggett*] the Commission commented on the failure of the protestants to show accurately how their financial structures would be adversely affected by any diver-

sion. In others, the Commission commented on the exaggeration by protestants of potential diversions in light of the existence of the 232 carriers already being used by the DOD.

666 F.2d at 531.

 In this case, the Commission commented on the importance of more efficient operations which would bear upon most of the announced policies in § 101(a)(7). We conclude, as we did in *Baggett,* that it is not incumbent upon the Commission to comment specifically with respect to each of the separate elements of the national transportation policy.

The decision of the Commission is AFFIRMED.