**REFRIGERATED TRANSPORT COMPANY, INC., Petitioner,**

v.

**The INTERSTATE COMMERCE COMMISSION and the United States of America, Respondents.**

No. 81–7939.

United States Court of Appeals, Eleventh Circuit.

July 18, 1983.

Serby & Mitchell, Roger A. Kirschenbaum, Atlanta, Ga., for petitioner.

Charles S. Stark, Colleen J. Bombardier, ICC, Susan J. Atkinson, Robert B. Nicholson, Asst. Ch. Appellate Sec., Antitrust

Div., Justice Dept., Washington, D.C., for respondents.

Yankee, Bernstein & Lutich, A. Michael Bernstein, Phoenix, Ariz., for Riley Whittle, Inc.

Before HATCHETT and CLARK, Circuit Judges, and SCOTT *, District Judge.

PER CURIAM:

Refrigerated Transport Company, Inc. (Refrigerated), a trucking company, petitions this court for review of a final order of the Interstate Commerce Commission (ICC) granting a certificate of public convenience and necessity to transport commodities pursuant to the Motor Carrier Act of 1980. We affirm.

In 1981, Riley Whittle, Inc. (Riley), a trucking firm, applied to the ICC for a certificate of public convenience and necessity to transport commodities used by hardware and drugstores, discount, grocery, and food business houses between points in the United States. Riley attached to its application verified statements by Riley's vice-president and the traffic manager of Clorox Company (Clorox). Clorox stated that Riley's request for expanded authorization would aid in the delivery of Clorox's products, including bleach, air freshener, kitty litter, steak sauce, cereal, and salad dressing to its distribution sites in the continental United States. Clorox was the only supporting shipper.

After the ICC published Riley's application in the Federal Register, three motor carriers, including Refrigerated, filed a formal protest to Riley's application. Refrig-

erated is a motor common carrier authorized to transport perishable and non-perishable commodities in interstate and foreign commerce. Refrigerated argued that it transported in excess of 182,000 shipments per year and that approximately 90% of its traffic would be diverted if Riley's application was granted.

In June, 1981, the ICC granted Riley's application. The ICC concluded that Clorox's supportive evidence established that a need existed for Riley to have nationwide authority to ship to and serve other shippers. In August, 1981, the ICC, Division II, reviewed Refrigerated's appeal and held that the supportive evidence, as presented by Clorox, was not representative of a nationwide need to serve other shippers. It reduced the scope of authority initially awarded to Riley by authorizing service between ten cities and sixteen counties and points in the United States. Riley filed a petition for discretionary review of Division II's decision. The ICC granted Riley's petition, and upon re-weighing the evidence, held that Division II was incorrect. The ICC adopted the broader grant of authority which had originally been approved by the review board, except that the ICC limited service to the continental United States, expressly excluding Alaska and Hawaii from the grant of service. Refrigerated petitions this court for review.

The sole issue we must decide is whether the ICC's grant of a certificate of public convenience and necessity to Riley, authorizing it to transport such commodities as are dealt in or used by hardware and food stores, discount, grocery, and food business houses nationwide, is lawful, rational, and supported by substantial evidence.[1] We find that it is.

---

\* Hon. Charles R. Scott, U.S. District Judge for the Middle District of Florida, was a member of the panel that heard oral arguments but due to his death on May 12, 1983 did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

1. Title 5 U.S.C.A. § 706 provides, in pertinent part, that:

[T]he reviewing court shall decide all relevant questions of law, interpret constitution-

al and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

■ The principal goals of the Motor Carrier Act, as enacted by Congress, are a revision of the standards to be applied in motor carrier licensing cases, a promotion of greater competition by allowing easier carrier entry, a simplification of and expedition of the certification process, and a general lessening of restrictions on motor carrier operations. *Gamble v. ICC,* 636 F.2d 1101, 1103 (Unit B 5th Cir.1981). The new federal policy represents a continuing effort by Congress to reduce unnecessary regulations in the federal government. *See* S.Rep. No. 641, 96th Cong., 2d Sess. 1 (1980). Under the Motor Carrier Act of 1980, an applicant carrier must show that it is fit, willing, and able to provide the scope of authority which it requests. 49 U.S.C.A. § 10922(b)(1).[2] After providing a showing that it is fit, willing, and able to provide these services, the burden shifts to any competitor or protestant to persuade the ICC that the transportation sought "to be authorized is inconsistent with the public convenience and necessity." *Baggett Transportation Co. v. United States,* 666 F.2d 524, 527 (11th Cir.1982).

■ The ICC found that the testimony of Clorox, Riley's principal shipper, established that Riley's application for a nationwide grant of authority would serve a useful public purpose responsive to a public demand or need. Despite Refrigerated's contentions, there is no prohibition against using the testimony of a sole shipper (i.e.,

Clorox) to support an ICC grant of a certification of necessity and convenience.

■ Congress entrusted the weighing and balancing of factors affecting the public interest to the ICC for determination "of a useful public purpose responsive to a public demand or need." *Refrigerated Co., Inc. v. ICC,* 673 F.2d 1196, 1200 (11th Cir.1982). Because of the ICC's recognized expertise in transportation matters generally, and the ICC's expertise in determining which motor carrier operations will serve a useful public purpose, its orders are afforded a presumption of validity not easily disturbed. *East Texas Motor Freight Lines, Inc. v. Frozen Food Express,* 351 U.S. 49, 54, 76 S.Ct. 574, 577, 100 L.Ed. 917 (1956); *United States v. Central Truck Lines,* 548 F.2d 523, 524 (5th Cir.1977).

■ The authority of the ICC in such an instance is great. In the recently decided *Refrigerated Transport Co. v. ICC,* 707 F.2d 497 (11th Cir.1983), the movant; Refrigerated Transport, contested the decision of the ICC to expand the authority sought by the trucking applicant; Cornett Transportation Co. (Cornett). Cornett initially sought authority to transport "plastic materials or products, glass material, products, and bottles, cans suitable for use as beverage containers, and beverages, both alcoholic and non-alcoholic, including, but not limited to soda, beer, and liquor, and plastic and glass bottles, containers, and cans, between

---

(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

2. Title 49 U.S.C.A. § 10922(b)(1) provides that:
(b)(1) Except as provided in this section, the Interstate Commerce Commission shall issue a certificate to a person authorizing that person

to provide transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title as a motor common carrier of property if the Commission finds—
(A) that the person is fit, willing, and able to provide the transportation to be authorized by the certificate and to comply with this subtitle and regulations of the Commission; and
(B) on the basis of evidence presented by persons supporting the issuance of the certificate, that the service proposed will serve a useful public purpose, responsive to a public demand or need;
unless the Commission finds, on the basis of evidence presented by persons objecting to the issuance of a certificate, that the transportation to be authorized by the certificate is inconsistent with the public convenience and necessity.

points in the states of Maryland, Delaware, Virginia, North Carolina, South Carolina, New Jersey, Pennsylvania, and West Virginia." The ICC granted Cornett the authority it requested. The ICC, on its own initiative, expanded authority from beverages and containers to food and related products. Refrigerated complained that the expansion of an applicant's requested authority, where the applicant had not asked for an expansion, was beyond the power of the ICC. The Eleventh Circuit noted that "[a]lthough the certificate was expanded to include commodities not requested in the original application, the applicant had persistently supported the enlarged commodity description as being in its power to perform and as being responsive to a public need. We conclude, therefore, that mere enlargement of the authority granted the applicant is not beyond the power of the Commission . . . ." at 501. If the unilateral enlargement of a grant of authority upon the ICC's own initiative is not beyond the power of the ICC, it follows that where an applicant has supported its application for authority to transport "commodities as are dealt in or used by hardware and drugstores . . .," the ICC has authority to grant such authority. The ICC may do so unless some showing is made by a protestant that the transportation sought to be authorized is inconsistent with the public convenience and necessity.

Moreover, in this instance, the ICC based its final decision not merely upon the testimony of Clorox, but also upon "the abstract of applicant's recent operations, [a consideration of] the commodities applicant is authorized to transport, and the empty back haul miles the applicant may eliminate [thereby convincing the ICC that] in light of this evidence the original broad territorial authority awarded by the review board was correct." *Riley Whittle, Inc. Extension—United States Points,* ICC Decision No. MC–117786 (Oct. 22, 1981). As determined by the ICC, Riley has met its burden. It was upon Refrigerated to make a showing that the transportation sought to be authorized was inconsistent with the public convenience and necessity.

Toward this end, Refrigerated argues that the ICC did not properly weigh the impact of Riley's grant of authority upon Refrigerated's own business. We note, however, that 49 U.S.C.A. § 10922(b)(2)(B) expressly provides that the ICC shall not find a "diversion of revenue or traffic from an existing carrier to be in and of itself inconsistent with the public convenience and necessity." Refrigerated offered speculative evidence that its finances would suffer if the grant of authority was made to Riley. If such evidence were true, and it appears to be inconclusive at best, it would still not be in and of itself a basis upon which to deny a certification of public convenience and necessity to Riley.

Accordingly, we hold that the ICC's decision to grant to Riley authority to transport items nationwide is supported by substantial evidence. We affirm the decision of the ICC.

AFFIRMED.