RTC TRANSPORTATION, INC. and
Coastal Transport & Trading
Co., Petitioners,

v.

The INTERSTATE COMMERCE COM-
MISSION and the United States of
America, Respondents.

No. 82–8710.

United States Court of Appeals,
Eleventh Circuit.

May 10, 1984.

Roger A. Kirschenbaum, Alan Serby and Robert W. Gerson, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for RTC Transp., Inc. and Coastal Transport & Trading Co.

Essie F. Stevens, I.C.C., Robert B. Nicholson, Asst. Chief, and Neil R. Ellis, Appellate Div., U.S. Dept. of Justice, Washington, D.C., for respondents.

D. Paul Stafford, Dallas, Tex., for intervenor.

Before VANCE and CLARK, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

PER CURIAM:

This is a petition for review of an order of the Interstate Commerce Commission ("ICC") granting, to D. Massey and G. Odom, d.b.a. Cowboy Trucking ("Cowboy"), a certificate of public convenience and necessity to transport food and related products between points in Texas, Tennessee, Alabama, Georgia, and Florida. The petitioners, RTC Transportation, Inc. ("RTC")

---

* Honorable Luther M. Swygert, U.S. Circuit Judge for the Seventh Circuit, sitting by designa-

tion.

(formerly Refrigerated Transport Company, Inc.) and its subsidiary Coastal Transport & Trading Co. ("Coastal"), filed protests to Cowboy's application for authority with the ICC, challenging Cowboy's fitness, willingness, and ability to provide service of the requested scope, and arguing that granting the authority would injure themselves and the public. A review board found that Cowboy had shown fitness and sufficient public need, and granted the certificate. That decision was made final after review by a division of the ICC, and this petition for review followed.

■ Prior to the Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793, motor common carriers were extensively regulated; applicants for common carrier authority faced the formidable burden of proving with particularity their fitness, willingness, and ability and the existence of a public need for services unmet by existing carriers, and grants of authority were limited to the particular commodities and territories for which need was shown. This regulatory model of screened and limited access to the common carrier market was profoundly altered by the 1980 Act, which liberalized entry requirements, largely substituting competition for regulation as the mechanism for ensuring efficient and adequate service. Under the 1980 Act applicants must show their fitness, willingness, and ability and present representative evidence of public need, usually the testimony of some supporting shippers who wish to use the proposed service. If these burdens are met the certificate will issue unless a protesting carrier with overlapping authority persuades the ICC that the proposed authority is "inconsistent with the public convenience and necessity." 49 U.S.C. § 10922(b)(1) (Supp. V 1981). The burden of disproving an applicant's prima facie showing of public need thus lies with the protestant. See *Refrigerated Transport Co. v. ICC*, 709 F.2d 1430, 1432 (11th Cir. 1983); *RTC Transportation, Inc. v. ICC*, 708 F.2d 620, 623 (11th Cir.1983); H.R.Rep.

No. 1069, 96th Cong., 2d Sess. 3, 12–15 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 2283, 2285, 2294–97.

In its application Cowboy stated that it owned two tank trailers suitable for transporting commodities in bulk, and was financially able and willing to acquire additional equipment as required by its shippers' needs. Four shippers supported the application. Three required shipment of citrus concentrates from points in Florida to Sulphur Springs, Texas, and one required shipment of corn syrup from Memphis, Tennessee, to various points in Florida, Georgia, and Alabama. Three of the shippers required bulk transportation, and the fourth shipped in barrels by van, although it intended to convert to bulk shipment. Cowboy's application, which sought authority to transport food and related products throughout each of the states in which the supporting shippers required service, was opposed by RTC and Coastal, which held broad certificates authorizing them to provide the same services. The ICC issued the certificate requested by Cowboy. In their petition for review of that order, RTC and Coastal challenge Cowboy's fitness, willingness, and ability to provide the services authorized by its certificate of public convenience and necessity; the commodity and geographic scope of the authority granted; the ICC's weighing of the public interest; and the adequacy of the ICC's findings concerning the elements of the National Transportation Policy embodied in 49 U.S.C. § 10101 (Supp. V 1981). The ICC's findings of fact must be sustained if they are supported by substantial evidence, 5 U.S.C. § 706(2)(E) (1982), and its conclusions and actions based on those facts may be rejected only if they are arbitrary, capricious, an abuse of discretion, or not in accordance with law, *id.* § 706(2)(A).

■ RTC and Coastal contend that Cowboy is not fit, willing, and able to provide the service authorized because of the breadth of the authority and the limited amount of Cowboy's equipment. They ar-

gue that ownership of two tank trailers cannot support the authorization to transport all food and food related products, because the tank trailers are suited only for shipments in bulk. This argument therefore replicates their second challenge, to the scope of commodities authorized to be carried. It is settled, however, that, even though ownership of equipment is relevant to the issue of fitness, applicants need not acquire extensive equipment and facilities prior to seeking authorization, *Steere Tank Lines, Inc. v. ICC*, 675 F.2d 103, 104 & n. 2 (5th Cir.1982). Indeed, a carrier is not required by its common carrier status to be capable of providing each of the transportation services or a particular volume of services within its authority, but only to serve all comers up to its capacity. *Refrigerated Transport Co. v. ICC*, 707 F.2d 497, 501–02 (11th Cir.1983); *J.H. Rose Truck Line, Inc. v. ICC*, 683 F.2d 943, 949 (5th Cir. Unit B 1982); *Steere Tank Lines*, 675 F.2d at 105. The ICC was not obliged to limit the grant of authority to commodities in bulk, on the rationale that the supporting shippers' needs were representative of no broader need than bulk transportation, because one of the shippers actually needed van carrier service, and Cowboy expressed a willingness to acquire any needed equipment. See *Refrigerated Transport*, 707 F.2d at 501–02. Nor was the ICC obliged to limit the types of commodities to citrus concentrates and corn syrup or closely related categories, for the 1980 Act specifically directs the ICC "to broaden the categories of property authorized by the carrier's certificate or permit" in order to promote efficiency by enhancing the carriers' opportunities to carry loads rather than to travel empty for lack of available cargo within their authorizations. 49 U.S.C. § 10922(h)(1)(B)(i) (Supp. V 1981); see H.R.Rep. No. 1069, 96th Cong., 2d Sess. 17–18 (1980), *reprinted in* 1980 U.S. Code Cong. & Admin.News 2299–2300. Although the ICC may not force applicants to accept standardized broad commodity categories against their will, see *RTC Trans-*

*portation, Inc. v. ICC*, 708 F.2d 617, 619 (11th Cir.1983); *American Trucking Associations, Inc. v. ICC*, 659 F.2d 452, 472 (5th Cir. Unit A 1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983), we have held that the broad commodity categories are appropriate when applicants request them, see *RTC Transportation*, 708 F.2d at 624–25 (certificate authorizing carriage of food products adequately supported by shipper of meats); *Refrigerated Transport Co.*, 707 F.2d at 501 (certificate authorizing carriage of food products adequately supported by shippers of beverages). Substantial evidence therefore supports the ICC's finding that Cowboy was fit, willing, and able to provide the service authorized, and the formulation of the commodity categories was not arbitrary or capricious, given the policy of promoting efficiency.

▮ RTC and Coastal also challenge the geographic scope of the authority granted to Cowboy, arguing that the evidence indicated a need only for "radial authority" (i.e., authority to travel to and from a hub) to and from Sulphur Springs, Texas, and Memphis, Tennessee, rather than throughout the five states. Such territorial restrictions are specifically disfavored by the 1980 Act because they increase the possibility of empty backhauls and thus encourage inefficiency. 49 U.S.C. § 10922(h)(1)(A), (B)(ii)–(iv); H.R.Rep. No. 1069, 96th Cong., 2d Sess. 17–18 (1980), *reprinted in* 1980 Code Cong. & Admin.News 2299–2300. Cowboy was not required to demonstrate need for its services at every point within the territory it sought to serve, but only representative need. Its supporting shippers demonstrated a need in several locations within Florida, Georgia, and Alabama, and at one site in each of Texas and Tennessee. We have repeatedly declined to establish a threshold number of sites necessary to show statewide need. *RTC Transportation*, 708 F.2d at 624–25; *Refrigerated Transport*, 707 F.2d at 502; *Deaton, Inc. v. ICC*, 693 F.2d 128, 130 (11th Cir.1982);

*Refrigerated Transport Co. v. ICC,* 673 F.2d 1196, 1199–1200 (11th Cir.1982). Unlike *Refrigerated Transport Co. v. ICC,* 686 F.2d 881, 887–88 (11th Cir.1982), in which we held that seven cities in six states were not representative of 33 states, here the supporting shippers showed a need in each state for which authority was granted. Although two of the states were represented by only one site each, broader authority in those states was not unreasonable, because the supporting shippers' needs at those sites were exclusively one-way; unless Cowboy were permitted to seek complementary pick-ups and deliveries near those sites, the risk of inefficiency due to empty backhauls would increase. Cf. *Refrigerated Transport,* 709 F.2d at 1433.

■ RTC and Coastal next argue that the ICC failed to consider their evidence of the impact on the public of the grant of authority. This evidence consists of sworn statements that the proposed authority overlapped a large portion of RTC's and Coastal's authority, from which business could be diverted, contending that resulting inefficiencies and cutbacks in service would harm the public. The 1980 Act specifically provides, however, that diversion of business from existing carriers is insufficient to establish that the proposed certificate is inconsistent with public convenience and necessity, 49 U.S.C. § 10922(b)(2)(B) (Supp. V 1981); see *Refrigerated Transport,* 709 F.2d at 1433; *RTC Transportation,* 708 F.2d at 625–26, unlike the practice prior to the 1980 Act, see *Refrigerated Transport Co. v. ICC,* 663 F.2d 528, 531 (5th Cir. Unit B 1981); *Refrigerated Transport Co. v. ICC,* 616 F.2d 748, 751 (5th Cir.1980) (per curiam). The reason for this change is that under a regime of liberalized entry and freer competition, diversion of some business is unlikely to produce gaps in service, as large numbers of carriers are allowed to compete to provide services for which need actually exists. Unless the protestant shows more specifically that such harm is likely, its evidence is insufficient to carry its burden of proof. RTC and Coastal contend that they did present such particularized evidence, because they projected that if Cowboy diverted 5% of RTC's total traffic it would lose 50% of its pre-tax income and be forced to raise its rates 10% above the inflation rate and to prune its less-than-truckload "protective" services to small communities, and would suffer increased inefficiencies such as travelling empty. The ICC review board discounted this evidence, however, because it was not shown that the tiny new carrier threatened to divert that much traffic from the huge established carrier. Because the supporting shippers found existing services inadequate, the board found that public need had been demonstrated. Record Excerpts, Ex. B at 2. The finding that the protestants did not meet their burden of proving public harm is supported by substantial evidence.

■ Finally, the petitioners argue that the ICC failed to make specific findings regarding the effect of the issuance of the certificate on the National Transportation Policy, citing 49 U.S.C. § 10922(b)(2)(A) (Supp. V 1981), which directs the Commission to "consider and, to the extent applicable, make findings on ... the transportation policy." It is settled that the ICC need not make detailed findings on each element of the policy if the path of its decision is clear. *RTC Transportation,* 708 F.2d at 626; *Refrigerated Transport,* 707 F.2d at 503; *Alamo Express, Inc. v. ICC,* 673 F.2d 852, 859–60 (5th Cir.1982); *Baggett Transportation Co. v. ICC,* 666 F.2d 524, 530–31 (11th Cir.1982). Here, it is plain that the ICC rejected as unsubstantiated the protestants' general allegations of possible impairments of service to small communities, ability to earn a profit, and efficiency, and found that the applicant would meet a need evidence by the supporting shippers. Cf. *Alamo Express,* 673 F.2d at 859–60.

The decision of the Commission is therefore AFFIRMED.