RTC TRANSPORTATION, INC. and
Coastal Transport & Trading
Co., Petitioner,

and

B.J. McAdams, Inc.,
Intervening-Petitioner,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents,

and

U.S. Express, Inc.,
Intervening-Respondent.

No. 82–8714.

United States Court of Appeals,
Eleventh Circuit.

May 10, 1984.

Roger A. Kirschenbaum, Robert W. Gerson, Atlanta, Ga., Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for petitioner.

Richard J. Osterman, Jr., I.C.C., Neil R. Ellis, Robert B. Nicholson, U.S. Dept. of Justice, Washington, D.C., for respondents.

James W. Woods, North Little Rock, Ark., for intervening petitioner.

Before VANCE and CLARK, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

---

* Honorable Luther M. Swygert, U.S. Circuit Judge for the Seventh Circuit, sitting by designa-

PER CURIAM:

This is a petition for review of an order of the Interstate Commerce Commission ("ICC") granting to U.S. Express, Inc., a certificate of public convenience and necessity to transport general commodities (except classes A and B explosives, household goods, and commodities in bulk) between points in the United States (except Alaska and Hawaii). U.S. Express's application requested motor common carrier authority to transport such commodities between facilities of Ralston Purina Co., a shipper that supported the application, and points in the 48 contiguous states. After publication of a notice of the proposed authority in the Federal Register, the application was opposed by a carrier with competing authority, which unsuccessfully challenged the applicant's fitness, willingness, and ability. The decision of the ICC review board to grant the certificate was affirmed after administrative appeal to a division of the ICC, with one modification, removing the restriction of authority to Ralston Purina's facilities, in accordance with ICC policy against imposing facilities restrictions. Because of the expansion in the proposed scope of the authority the notice was republished in the Federal Register, and the petitioners, RTC Transportation, Inc. ("RTC") (formerly Refrigerated Transport Co., Inc.) and its subsidiary Coastal Trading & Transport Co. ("Coastal"), sought to intervene as protestants. They challenged U.S. Express's fitness, willingness, and ability to perform the proposed service and the need for authority of such broad commodity and geographic scope, and argued that granting the authority would be inconsistent with public convenience and necessity. The ICC review board nevertheless approved the issuance of the certificate, and its decision was again affirmed by a division of the ICC following administrative appeal. This petition for review followed.

The standards for granting applications for motor common carrier authority are

tion.

established by the Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793. Under the prior law an applicant had to prove its fitness and the public need for its proposed service with particularity, and certificates were narrowly tailored to match the evidence supporting the application. Since the 1980 Act applicants must show only their fitness, willingness, and ability, and make a prima facie showing, by representative evidence, of public need. Unless protestant carriers carry the burden of showing that granting the certificate would be "inconsistent with the public convenience and necessity" the certificate will issue. 49 U.S.C. § 10922(b)(1) (Supp. V 1981); H.R.Rep. No. 1069, 96th Cong., 2d Sess. 3, 12–15 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 2283, 2285, 2294–97.

In its application U.S. Express offered the testimony of its president, who had extensive prior transportation experience, concerning his preliminary efforts to secure financing and to acquire or lease equipment, and the statement of Ralston Purina, its supporting shipper. Ralston Purina is a large and diversified business with 80 facilities in 31 states, and numerous sales offices, vendors, and customers nationwide, whose statement indicated a need for additional motor carriers with broad authority because it was converting to primary reliance on motor carriage. Although U.S. Express originally sought authority only between Ralston Purina's facilities and other points, it welcomed the ICC's excision of the facilities restriction. The ICC found that U.S. Express had demonstrated fitness and public need. In their petition for review, RTC and Coastal challenge those findings; claim that the ICC failed to consider their evidence of negative impact on themselves and the public, and failed to make specific findings concerning the elements of the National Transportation Policy enunciated in 49 U.S.C. § 10101 (Supp. V 1981); and claim that the ICC's policy of avoiding facilities restrictions was adopted without proper procedures.

Many of these arguments are similar to those we have discussed in *RTC Transportation, Inc. v. ICC,* 731 F.2d 1497, decided this same day, and in other cases, and we shall deal with them summarily. The petitioners challenge U.S. Express's fitness, willingness, and ability on the ground that it lacked equipment and facilities. But ownership of equipment is not the sole means of showing fitness, and indeed it would be impractical to force applicants without existing authority to acquire equipment before they acquire a certificate. *Steere Tank Lines, Inc. v. ICC,* 675 F.2d 103, 104 n. 2 (5th Cir.1982). The application here offered as alternative proof the president's experience and the company's preparations to begin business. The ICC's finding of fitness was therefore supported by substantial evidence. 5 U.S.C. § 706(2)(E) (1982).

RTC and Coastal challenge the ICC's decision to grant U.S. Express authority to carry general commodities, on the ground that Ralston Purina's needs are not representative of so broad a grant. They characterized Ralston Purina's products as primarily foodstuffs and related products, but in fact that company's and its subsidiaries' products are quite diverse. Particularly in light of the 1980 Act's policy favoring the use of broader categories of commodities, 49 U.S.C. § 10922(h)(1)(B)(i) (Supp. V 1981), the ICC's conclusion that Ralston Purina's needs were representative of a broad general need was justified. The breadth of the grant of authority was especially appropriate because U.S. Express sought such authority. Although the ICC may not force applicants to accept standardized broad commodity categories against their will, see *RTC Transportation, Inc. v. ICC,* 708 F.2d 617, 619 (11th Cir.1983); *American Trucking Associations, Inc. v. ICC,* 659 F.2d 452, 472 (5th Cir. Unit A 1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983), we have held that broad commodity catego-

ries are appropriate when applicants request them, see *RTC Transportation, Inc. v. ICC*, 708 F.2d 620, 624–25 (11th Cir. 1983); *Refrigerated Transport Co. v. ICC*, 707 F.2d 497, 501 (11th Cir.1983).

■ The petitioners further contend that the need for nationwide authority was not demonstrated by representative evidence. Ralston Purina does not have facilities in each of the 48 contiguous states, but does have facilities and customers over an expansive range, and might require delivery to individual customers, such as users of livestock feed, at any point. Substantial evidence therefore supported the ICC's finding regarding the geographic scope of the public need, particularly in light of the Act's policy of eliminating territorial restrictions. 49 U.S.C. § 10922(h)(1)(A), (B)(ii)–(iv) (Supp. V 1981). Cf. *Refrigerated Transport Co. v. ICC*, 709 F.2d 1430; 1432–33 (11th Cir.1983) (per curiam) (one shipper supported nationwide grant of authority).

■ RTC and Coastal also argue that, even if the applicant made a prima facie showing of public need of the scope authorized, the ICC did not adequately consider their rebuttal evidence of potential public harm. As in *RTC Transportation, Inc. v. ICC*, 731 F.2d 1497, and in numerous other cases, they argued that the grant of authority could result in a diversion of 5% of RTC's business, a loss of 50% of its pre-tax income, and the raising of its rates by 10% beyond the inflation rate. The ICC discounted these allegations because a protestant has the burden of showing harm to the public, rather than harm to itself, see 49 U.S.C. § 10922(b)(2)(B) (Supp. V 1981), and the alleged threat to RTC's operations had not been substantiated in any case. Cf. *Refrigerated Transport*, 709 F.2d at 1433; *RTC Transportation*, 708 F.2d at 625–26. The ICC was justified in concluding that the protestants had not demonstrated that issuance of the certificate was inconsistent with public convenience and necessity.

Our conclusion is not altered by the ICC's failure to make specific findings on each element of the National Transportation Policy, for if its reasoning is clear such findings are unnecessary. *RTC Transportation*, 708 F.2d at 626; *Refrigerated Transport*, 707 F.2d at 503; *Alamo Express, Inc. v. ICC*, 673 F.2d 852, 859–60 (5th Cir.1982); *Baggett Transportation Co. v. United States (ICC)*, 666 F.2d 524, 530–31 (11th Cir.1982).

■ The final argument raised by the petitioners is more novel. They contend that the ICC's application of its policy against imposing facilities restrictions in new certificates denied them due process because the policy was announced in adjudicatory proceedings, *Eckert Trucking Co.*, 132 M.C.C. 829, 829–30 (1982), rather than being promulgated in rulemaking proceedings with notice and opportunity for comment. Their argument begins with a provision of the 1980 Act requiring the ICC to promulgate rules, after notice and comment, for handling proceedings to remove restrictions in existing certificates. 49 U.S.C. § 10922(h) (Supp. V 1981). It would be anomalous, they argue, to use different procedures for determining policy concerning facilities restrictions in restriction-removal proceedings and in new-certificate proceedings. It is well established, however, that agencies have discretion to choose whether to proceed by rulemaking or adjudication, *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974). This is true even when adjudication is used to announce new policy after years of contrary precedent, see *Chisholm v. FCC*, 538 F.2d 349, 364–66 (D.C.Cir.), *cert. denied*, 429 U.S. 890, 97 S.Ct. 247, 50 L.Ed.2d 173 (1976); when, as here, it is used to interpret a new statute that alters the force of decisions under prior law the agency's exercise of its discretion seems especially unassailable. The petitioners cite no reason why it would be an abuse of discretion for the ICC to choose to use adjudication as a vehicle for

interpreting the 1980 Act. To the extent that their argument focuses on the substantive merit of the policy, rather than on its procedural propriety, it is equally weak. We have already recognized that restricting authority to facilities of the supporting shippers is contrary to the policy of the 1980 Act. *RTC Transportation, Inc. v. ICC,* 708 F.2d at 624. Although forbidding applicants who wish facilities restrictions to so limit their applications might raise a different question, cf. *RTC Transportation,* 708 F.2d at 618–19, we need not consider that issue because U.S. Express welcomed the excision of the restriction. Cf. *Refrigerated Transport,* 709 F.2d at 1432–33.

The decision of the Commission is therefore AFFIRMED.