**B.J. McADAMS, INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMIS-SION and United States of America, Respondents.**

No. 82–1271.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 2, 1982.

Decided Jan. 14, 1983.

James W. Woods, North Little Rock, Ark., for petitioner.

Robert J. Grady, I.C.C., Washington, D.C., with whom John Broadley, Gen. Counsel, and Robert S. Burk, Deputy Gen. Counsel, I.C.C., Washington, D.C., were on the brief for respondents.

Robert B. Nicholson, Stephen F. Ross, John J. Powers, III, Dept. of Justice, and Henri F. Rush, Associate Gen. Counsel, I.C.C., Washington, D.C., also entered appearances for respondents.

Before GINSBURG and SCALIA, Circuit Judges, and GESELL,\* United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

B.J. McAdams, Inc. ("McAdams") seeks to set aside a decision of the Interstate Commerce Commission granting the application of Freight Express, Inc. ("Freight Express") to broaden the territories its certificate of public convenience and necessity permits it to serve. A certificate of August 29, 1980, authorized Freight Express to transport "[g]eneral commodities" (with some designated exceptions) between "the facilities of National Brands, Inc., Troy, MI, and Feather Lite Manufacturing Company, a Division of National Brands, Inc., at Hot Springs, AR, on the one hand, and, on the other, points in the United States, including Alaska but excluding Hawaii." Brief of the ICC at 14. On May 13, 1981, Freight Express applied, pursuant to the Motor Carrier Act of 1980, Pub.L. 96–296, 94 Stat. 793 (1980), to broaden its authority to operate "[b]etween Oakland County, MI., and Garland County, AR., on the one hand and on the other all points in the United States." Appendix (App.) 4. Notice of Freight Express' application was published in the Federal Register and McAdams and its affiliates submitted adverse comments. The ICC's Restriction Removal Board granted Freight Express' application on July 30, 1981, App. 53; McAdams' appeal to the Commission was denied on January 7, 1982. App. 78. McAdams then petitioned for re-

view in this court as authorized by 28 U.S.C. § 2342(5).

Three issues are raised on appeal. Does McAdams have standing to challenge this ICC decision? Did the ICC adequately assess the fitness of applicant Freight Express in the restriction removal proceeding? Did Freight Express sufficiently address, in its application, the factors the statute prescribes as grounds for removing certificate restrictions? For the reasons set forth below we uphold the ICC's decision granting Freight Express' application except insofar as it authorizes Freight Express to transport commodities to and from Hawaii.

## I. STANDING

McAdams and Freight Express hold operating authority in the same territory.[1] This

is enough, the Commission recognizes, to permit McAdams to file comments with the agency opposing broadened territorial authority for Freight Express.[2] But authority to carry general commodities within the same territory does not suffice to support McAdams' petition for judicial review, the ICC argues.[3] To cross the standing threshold established by the "case or controversy" requirement of Article III of the Constitution,[4] McAdams must demonstrate "injury in fact."[5] McAdams has not done this, the Commission maintains.

■■■ The ICC acknowledged at argument that the standing question it raises here is novel.[6] It is settled that a disappointed applicant for an exclusive license has standing to challenge the grant of the

1. McAdams' certificate, Docket No. MC–134922 (Sub-No. 337), authorizes it to carry "*general commodities* (except commodities in bulk, household goods as defined by the Commission, and classes A and B explosives), between points in the United States (except Alaska and Hawaii)." Reply Brief at 7.

2. 49 U.S.C.A. § 10922(h)(2), applicable to removal of operating restrictions, calls for regulations affording "interested parties" the opportunity to comment. The relevant regulation, 49 C.F.R. § 1137.12, similarly provides that "[a]ny interested person may comment on the applicant's proposal." In connection with applications for new certificates, however, the 1980 Act imposes restrictive standing requirements for intervention in the Agency proceedings:

> No motor common carrier of property may protest an application to provide transportation filed under this subsection unless—
> (A)(i) it possesses authority to handle, in whole or in part, the traffic for which authority is applied;
> (ii) it is willing and able to provide service that meets the reasonable needs of the shippers involved; and
> (iii) it has performed service within the scope of the application during the previous 12-month period or has, actively in good faith, solicited service within the scope of the application during such period;
> (B) it has pending before the Commission an application filed prior in time to the application being considered for substantially the same traffic; or
> (C) the Commission grants leave to intervene upon a showing of other interests . . . .
> 49 U.S.C.A. § 10922(b)(7). The reason for the failure of Congress and the Commission to impose equally stringent standing requirements

for protests to restriction removal applications is not apparent.

3. The Commission underscores that participation in administrative proceedings does not automatically qualify the participant to seek judicial review of the Agency's decision. *See, e.g., Sprunt & Son, Inc. v. United States,* 281 U.S. 249, 254–55, 50 S.Ct. 315, 317, 74 L.Ed. 832 (1930); *Koniag, Inc. v. Andrus,* 580 F.2d 601, 606, 611 (D.C.Cir.), *cert. denied,* 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 713 (1978).

4. *See Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (elements of standing, within the confines of Article III, are actual or threatened injury fairly traced to the challenged action, and likely to be redressed by a favorable decision); *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 215, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974) (standing is one facet of "the concept of justiciability, which expresses the jurisdictional limitations imposed upon federal courts by the 'case or controversy' requirement of Art. III").

5. *See id.* at 220–21, 94 S.Ct. at 2931–2932; *American Soc. of Travel Agents, Inc. v. Blumenthal,* 566 F.2d 145 (D.C.Cir.1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978). The statutes authorizing court review, 28 U.S.C. §§ 2342, 2344, in harmony with the constitutional requirement, specify that the petitioner be a party "aggrieved" by the agency's final order.

6. This colloquy with ICC counsel took place at oral argument:

license to a competitor, *see, e.g., Scripps-Howard Radio, Inc. v. FCC,* 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); it is equally clear that a business enterprise generally does not have standing to challenge the economic regulation of a competitor. *See, e.g., Sprunt & Son, Inc. v. United States,* 281 U.S. 249, 254, 50 S.Ct. 315, 317, 74 L.Ed. 832 (1930); *Rural Electrification Administration v. Northern States Power Co.,* 373 F.2d 686 (8th Cir.), *cert. denied,* 387 U.S. 945, 87 S.Ct. 2079, 18 L.Ed.2d 1332 (1967). But we know of no case that squarely addresses the standing of a non-exclusive licensee challenging a regulatory agency's grant of overlapping authority to a competitor.[7]

■ We need not decide whether the mere fact that two licenses entail overlapping *authority* confers standing on one licensee to challenge an agency's grant of the second license. In the case before us McAdams alleges, in addition to an overlap in authority, actual operations which the newly-granted authority will expose to competition with Freight Express. Specifically, McAdams states that it is "serving on a

continuous basis within the scope of [Freight Express'] Restriction Removal Application (transporting general commodities between points in Oakland County, Michigan, and Garland County, Arkansas, on the one hand, and, on the other, points in the United States)." Reply Brief at 7.[8] In our view, existence of such exposure to competing *operations* within the same territory does suffice to satisfy the "case or controversy" threshold. We leave for another day the question whether a licensee who alleges only overlapping authority—but no overlapping routes or shared customers—has standing to challenge in court the grant of a new or expanded license to a competitor.

The ICC invites us, alternately, to hold that McAdams, which itself has no authority to serve Hawaii, lacks standing to challenge the removal of Freight Express' Hawaii restriction. Brief of the ICC at 29–30.[9] If carriers are in actual, head-to-head competition in any region, however, each will be injured, in some degree, by *any* expansion of the other's territory. A carrier gains a competitive advantage in *all* areas it serves

Q: Aren't you asking us to do something rather novel? ... No case you cited involved this kind of situation where someone who holds an existing license is challenging a broadening of the grant of authority of a competitor ....

A: That's right, there is no case on point. *See Dialysis Centers, Ltd. v. Schweiker,* 657 F.2d 135, 138 (7th Cir.1981) (corporation providing kidney dialysis services lacks standing to challenge administrative approval of competing facility). *But see Association of Data Processing Serv. Org., Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (sellers of data processing services have standing to challenge Comptroller of Currency's ruling that banks may provide similar services); *Hardin v. Kentucky Utils. Co.,* 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968) (power company has standing to challenge expansion in TVA service area that threatens adverse competitive impact); *Hollingsworth v. Harris,* 608 F.2d 1026 (5th Cir.1979) (operator of nursing home has standing to challenge administrative finding of competitor's eligibility for federal subsidy); *Carroll Broadcasting Co. v. FCC,* 258 F.2d 440 (D.C. Cir.1958) (operating radio station has standing to challenge FCC's award of license to competitor); *Panhandle E. Pipeline Co. v. FPC,* 169 F.2d 881 (D.C.Cir.), *cert. denied,* 335 U.S. 854, 69 S.Ct. 81, 94 L.Ed. 402 (1948) (existing natu-

ral gas supplier has standing to challenge certification of competitor).

**7.** *But see* cases cited *supra* note 6. The ICC refers to 49 U.S.C.A. § 10922(g) which provides that "[a] certificate issued ... does not confer a proprietary or exclusive right ...." However, a party can be "aggrieved" or "injured in fact" while suffering no injury to "property." *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *FCC v. Sanders Bros. Radio Station,* 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940).

**8.** *See also* Reply Brief at 8 ("[I]t is ... highly probable, that [Freight Express] is transporting general commodities (with minor exceptions) on a coast-to-coast and border-to-border basis and is, therefore, in reality (from an economic perspective) in direct competition with *all* of [McAdams'] traffic."). McAdams' business address is in North Little Rock, Arkansas, *see* 46 Fed.Reg. 46418 (1981), a fact that lends credibility to McAdams' claim that it will be injured by an expansion of Freight Express' authority to serve all of nearby Garland County, Arkansas.

**9.** *See supra* note 1.

when it is granted broadened authority; the grant equips the carrier to offer better service to existing or potential customers for whose trade others operating in the region compete.

## II. FITNESS

Freight Express sought, and the ICC granted, the removal of two types of territorial restriction from Freight Express' certificate. The names of designated plant sites were replaced by those of the counties in which the plants were situated. And Hawaii was included with the rest of the United States in the description of territories Freight Express was allowed to serve.

McAdams protested to the Commission that Freight Express was engaged, with other carriers, in a conspiracy to obtain nationwide general commodities authority inconsistent with congressional intent, and through procedures intended to circumvent standard ICC review of requests for such authority. Freight Express, McAdams contended, was not "fit" to operate under the enlarged authority requested, indeed, it was not even fit for the original grant of authority. App. 9. But the ICC held that a restriction removal proceeding, governed by rules designed to expedite decision, was not an appropriate occasion to explore McAdams' broad allegations of conspiracy. App. 53–54. The Restriction Removal Board therefore disregarded McAdams' charges and agreed, as Freight Express requested, to effect site-to-county expansions and to remove the restriction on service to Hawaii.

### A. Restriction removal and fitness

In *Ritter Transportation, Inc. v. ICC,* 684 F.2d 86 (D.C.Cir.1982), *petition for cert. filed,* 51 U.S.L.W. 3448 (U.S. Oct. 4, 1982) (No. 82–594) *("Ritter I"),* we considered the ICC's removal of restrictions on the commodities a carrier was allowed to transport.

We held that the ICC's restriction removal mandate under the Motor Carrier Act of 1980 to "reasonably broaden the categories of property authorized by the carrier's certificate," 49 U.S.C.A. § 10922(h)(1)(B)(i), entails considering whether the applicant is "fit, willing, and able" to provide the additional transportation for which it seeks authorization. 684 F.2d at 87. In so holding, we aligned this Circuit with precedent initiated in the Fifth Circuit, most immediately, *Steere Tank Lines, Inc. v. ICC,* 666 F.2d 255 (5th Cir.1982), *reh'g denied,* 671 F.2d 1380 (March 8, 1982), *petition for cert. filed,* 51 U.S.L.W. 3013 (U.S. July 9, 1982) (No. 82–41). We quoted, with approval, this passage from *Steere:*

> We believe that an applicant for removal of a restriction should be required to make a prima facie showing in its application that it is fit, willing and able to provide the transportation for which it is seeking authorization. We do not suggest that such a showing must be elaborate. What form that showing should take and how detailed it should be are, in the first instance, matters that should be addressed by the Interstate Commerce Commission.

666 F.2d at 258.

The logic of *Ritter I* and its Fifth Circuit antecedents is applicable to the territorial restriction removals challenged here. In removing commodity or territorial restrictions, the ICC must consider the applicant's fitness to take on the expanded authority sought.[10] However, as explained below, the Commission need not entertain, in restriction removal proceedings, issues relating to a carrier's fitness to hold a prior certification. Further, the ICC may rely on published guidelines that provide a reasonable basis to infer, from prior certification or experience, fitness for described expansions.

---

**10.** The ICC had determined that safety is the only fitness consideration relevant in restriction removal proceedings. *See* App. 53 (Restriction Removal Board's July 30, 1981, decision granting Freight Express' application and rejecting McAdams' objections). Our decision today, in line with *Steere, Ritter I,* and *Ritter II,* requires consideration of general fitness for the broadened certification requested—not just safety—in deciding applications to expand operating authority.

## B. Scope of the fitness examination

The Motor Carrier Act of 1980 requires the ICC, on application by individual carriers, promptly to remove unreasonably narrow restrictions in operating authority. The Act provides that restriction removal proceedings may be informal, without opportunity for oral evidentiary hearings. 49 U.S.C.A. § 10922(h)(2). The ICC is to "process expeditiously" each restriction removal application, "not later than 120 days after the date the application is filed," except in "extraordinary circumstances," when the ICC may extend the deadline no more than 90 additional days. *Id.* § 10922(h)(1)(B), (h)(2). These statutory provisions, and the regulations that implement them,[11] would be severely undercut if the ICC, in response to comments on a restriction removal application, were to embark on a fitness inquiry reaching back to the applicant's original certification. Given a door so widely opened, carriers seeking to obstruct expansion of their competitors' authority could protract any restriction removal proceeding by filing wide-ranging fitness challenges. Removing minor restrictions in successive applications for restriction removal might thus become more onerous than obtaining a new certificate consolidating the same authority. Congress did not intend this result.[12]

We therefore hold that when restriction removal is sought, the ICC may tailor its scrutiny of the applicant's fitness to the requested *expansion* in operating authority. If the expansion is major, the fitness inquiry should be comparable in scope to the inquiry that would be made if the applicant were applying for a new certificate. But if the changes in operating authority are interstitial, or represent a relatively minor expansion in already broad authority, the Agency's consideration of the applicant's fitness may be correspondingly modest. In either case, the ICC may assume, for the purposes of the restriction removal proceeding, that the applicant is fit to operate under the authority previously granted to it. The ICC may thus exclude from the restriction removal proceeding, and reserve for separate consideration *sua sponte* or through the Commission's complaint process, a challenge that calls into question the applicant's fitness to operate under a certificate it already holds.[13]

## C. Generic fitness guidelines

The ICC has promulgated "guidelines"[14] presenting specific examples of restriction removals it will grant routinely. 49 C.F.R. §§ 1137.20–.29. We reiterate here what we have stated before: prior operations of a kind described in Commission guidelines may serve as a sufficient indicator of fitness for certain expansions of operating authority. *See Ritter v. ICC,* 697 F.2d 1153, at note 1 (D.C.Cir. 1983) *("Ritter II"); Ritter I, supra,* 684 F.2d at 87–88. For example, we suggested in *Ritter II,* at 1155, that a

---

11. The regulations specify informal notice and comment procedures. Notice of filing of a restriction removal application is published in the Federal Register, interested persons may submit comments, and, except in "extraordinary circumstances," an application is decided on the basis of its contents and written comments thereon. 49 C.F.R. §§ 1137.11, .12, .14.

12. In two complementary, coordinated sections of the 1980 Act Congress liberalized the conditions for granting new certificates and established liberal provisions for restriction removal; the two sections are now codified back-to-back in 49 U.S.C.A. § 10922. *See* H.R.Rep. No. 1069, 96th Cong., 2d Sess. at 3, 12–18 (1980); S.Rep. No. 641, 96th Cong., 2d Sess. at 5–7, 24–25 (1980), U.S.Code Cong. & Admin.News 1980, 2283. The restriction removal provisions were intended to achieve retroactively and

more expeditiously, for established carriers, what the new certificate provisions were to bring about prospectively, for new applicants.

13. *Steere* and *Ritter I* held that it should not be *easier* to obtain broad operating authority by removing restrictions from an initially narrow certificate than by applying for a new certificate. Today we hold that it should not be *more difficult* to obtain operating authority in two or more steps than it would be to obtain the same authority in a one-step application.

14. In *American Trucking Ass'ns v. ICC,* 659 F.2d 452 (5th Cir.1981), the Fifth Circuit observed that these "guidelines" were not, in reality, guidelines, but "normative rules, [to be] evaluated as such." 659 F.2d at 464 (footnote omitted).

carrier's fitness to transport "all bulk commodities" might, as a matter of course, be inferred from the breadth of its prior authority to transport numerous itemized bulk commodities. The Fifth Circuit's opinion in *American Trucking Associations v. ICC,* 659 F.2d 452, 468 (5th Cir.1981) *("ATA"),* approved the ICC's use of generic guidelines relating to site-to-county territorial expansions. (*See infra* p. 505.)

■ In short, the ICC may rely on generic guidelines that describe when applicants will be found fit to operate under described types of expanded authority. Commission management of restriction removals in this manner is supported by 49 U.S.C.A. § 10922(h)(1)(B), (h)(2). This same section of the 1980 Act justifies the Commission's refusal to reexamine, in a restriction removal context, fitness to hold prior certifications. *See supra* p. 503. The statute requires expeditious, uncomplicated restriction removal proceedings; generic guidelines may be essential to achieve that goal.

Generic guidelines must, of course, be reasonably calculated to further the statutory requirement that carriers be "fit, willing, and able," 49 U.S.C.A. § 10922(a), (b), and may not dispense with the case-by-case adjudication of restriction removal applications required by 49 U.S.C.A. § 10922(h)(1)(B).[15] But the guidelines may be engaged on a simple showing that an applicant's circumstances justify their application, and when the guidelines do apply, the ICC need not supply additional support for its inference that an applicant is fit to operate under the expanded authority sought.[16]

## D. The "site-only" and "Hawaii" generic restriction removal policies

Two specific ICC generic guidelines are challenged here. The Commission has announced that territorial restrictions confining a carrier to a designated business site are presumptively too narrow; as a matter of course the ICC is prepared to replace facility-specific designations with county-wide specifications. 49 C.F.R. § 1137.24.[17] And the ICC suggests it has a settled policy that carriers authorized to serve the continental United States will routinely have

**15.** That section requires the ICC to "implement by regulation, procedures to process expeditiously *applications of individual motor carriers* of property seeking removal of operating restrictions . . ." (emphasis supplied). Harmoniously, 49 C.F.R. § 1137.20 states that the ICC's guidelines "are not intended to constitute a prejudgment of any individual application." *Cf.* 49 U.S.C.A. § 10922(b)(3) (new certificates may not be issued on the basis of rulemaking proceedings that develop general findings regarding public convenience and necessity). *See ATA, supra,* 659 F.2d at 475.

**16.** Though we deal here only with territorial restrictions, guidelines addressing the removal of restrictions on commodities carried, or equipment used, may also prove acceptable. *Cf.* 49 C.F.R. §§ 1137.21, .25.

**17.** The guideline reads:
(a) *Less than county-wide authority.* Except as indicated in paragraph (b) of this section, authorizations to serve a territory less extensive than a county (including authorizations to serve named facilities or limited in a similar manner) are considered excessively narrow. Use of these procedures is normally appropriate for applications seeking the expansion of territorial authority to include all points in the county in which the authorized service point (including any portion of the commercial zone of an authorized point) or other limited service area is located. Where an authorized service point is located within a given city as well as a county, an applicant can seek expansion of authority to the city (which includes implied authority of points in its commercial zone). Use of these procedures is also normally appropriate for applications to remove restrictions which preclude service at points or areas smaller than a county.
(b) *Service at facilities not precisely located.* Where a carrier has authority to serve a broad territory limited to service at the facilities of a specified person, company, or type of business, and where the precise location of the facilities, by reference to a city, county, or the like, is not apparent from the certificate or permit, the limitations are not considered excessively narrow, and applications for modification should not normally be filed under these procedures. These procedures can, however, be used to expand authority limited to a particular business' facilities at named points.

their certificates extended to cover Hawaii as well.

▮▮ *ATA, supra,* addressed the first of these territorial guidelines:

> The Commission is also, upon carrier application, to "eliminate unreasonable or excessively narrow territorial limitations." 49 U.S.C.A. § 10922(h)(1)(B)(iv). The "guidelines" provide that authorizations to serve a territory less extensive than a county are considered excessively narrow. A carrier whose certificate is so restricted may seek expansion to all points in the county in which any authorized service point is located . . . . These standards are appropriately adapted to the elimination of unreasonable territorial limitations. A single point designation such as a particular plant site is obviously unreasonably narrow. What area extending beyond one point is wide enough not to be excessively narrow, yet not so large as to be unreasonably broad, cannot be determined by formula or crow's flight distances. The [guideline] does contemplate territorial authority broader than typically issued in the past, but the geographic areas it fixes are reasonably bounded and tailored to the purposes of the Act. . . . The decision is reasonable

and its selection is well within the Commission's discretion.

659 F.2d at 468 (footnotes omitted). We agree with the Fifth Circuit: an applicant found fit in a prior proceeding to serve a designated site may be assumed fit to serve the county surrounding that site; no further fitness inquiry by the ICC should be required.[18] An interested party, such as McAdams, who opposes a site-to-county certificate expansion challenges more than the applicant's fitness to operate under the *new* authority sought; as already discussed, the Commission may require a challenge sweeping beyond the applicant's request to be presented separately from the restriction removal proceeding.[19]

Turning to the ICC's assumption that carriers fit to serve the continental United States are fit to serve Hawaii as well,[20] we note a threshold concern. It is unclear whether this "Hawaii" policy existed prior to the instant review petition, or whether the ICC discovered it, post hoc, to justify to this court its disposition of the Freight Express application. The ICC states that the Hawaii restriction removal policy is inferable from a Commission policy statement on new grants of authority. Brief of the ICC

---

**18.** We discern no reason, nor has McAdams suggested any, why a carrier fit to serve one designated site within a county would not be fit to serve the county as a whole.

**19.** McAdams alleges that Freight Express and two other carriers under common management are conspiring to thwart the ICC's regulations. The ICC is in fact currently investigating Freight Express' operations, and states that "[a]fter an evaluation of the evidence collected [the ICC] will institute whatever enforcement actions, if any, it deems necessary." Brief of the ICC at 40. McAdams, the ICC asserts, need not rely on the Commission-initiated investigation; it may invoke the "well-established complaint process for commencing investigation and revocation proceedings." *Id.* at 38 (footnote omitted). (McAdams has previously participated in such complaints, both as complaining party, and as respondent to a complaint filed by one of the companies McAdams now alleges is part of Freight Express' conspiracy. *Id.* at 38 n. 11)

**20.** Although the ICC has briefed the Hawaii exclusion removal issue, neither Freight Ex-

press nor McAdams has evinced specific concern with the matter. Freight Express' application for restriction removal, in the section describing the removals sought, mentioned only the site-to-county expansions. App. 2. However, the capsule summary of Freight Express' application published in the Federal Register did note the removal of the Hawaii restriction.

For its part, before both the Commission and this court, McAdams has not attacked the Hawaii restriction removal specifically, but has alleged generally that Freight Express "is 'unfit' to serve within the scope of the application," Brief of Petitioner at 7, that Freight Express "demonstrated [its] lack of fitness to receive the subject grants of authority," *id.* at 18, and that Freight Express was unlawfully seeking *"nationwide general commodity authority,"* *id.* at 23. From this we infer that McAdams challenges both the site-to-county expansions and the removal of the Hawaii exclusion in Freight Express' certificate, even though McAdams itself apparently does not, as yet, hold authority to serve Hawaii. *See supra* note 1.

at 11, citing 45 Fed.Reg. 8679[8], 86802–86803 (December 31, 1980). The cited statement does announce that "[w]here applicants [for new certificates] justify a need for service in the United States, it will include service to points in . . . Hawaii," 45 Fed.Reg. 86803, but nowhere addresses applications for restriction removal. Nor is a "Hawaii" policy included with the other restriction removal guidelines at 40 C.F.R. §§ 1137.20–.29. Neither the Restriction Removal Board, App. 53–54, nor the Commission, App. 78, referred to any such policy, or even noted the new certificate policy statement now cited by the ICC.

■ Assuming the ICC in fact has a Hawaii restriction removal policy, we are at a loss to determine how the policy rationally implements the requirement that applicants for expanded authority establish their fitness to operate under the expanded license. In reviewing the same Hawaii policy in its intended application to new certificates, the Fifth Circuit stated: "[T]he notion that any carrier fit, willing, and able to transport throughout the continental forty-eight states is ipso facto fit, willing and able, by intermodal service or otherwise, to provide service to . . . Hawaii, 2,392 miles by sea or air from San Francisco, defies logic." 659 F.2d at 474. We agree.

### III. THE STATUTORY FACTORS RELATING TO RESTRICTION REMOVAL

The Motor Carrier Act of 1980 directs the ICC to undertake case by case restriction removal when it finds that restrictions are "wasteful of fuel, inefficient, or contrary to the public interest." 49 U.S.C.A. § 10922(h)(1)(B)(v). The ICC is required to consider "the impact [of a restriction removal] . . . upon the consumption of energy resources, potential cost savings and improved efficiency, and . . . [to] give special consideration to providing and maintaining service to small and rural communities and small shippers." *Id.* § 10922(h)(2). The Commission's regulations require restriction removal applications to include a statement describing the anticipated effect of the proposed expansion on these statutory factors. 49 C.F.R. § 1137.10(c).

McAdams contends that Freight Express' application failed adequately to address the statutory factors;[21] on that account, McAdams urges, the ICC acted arbitrarily in granting the application. The ICC answers that the statutory factors were addressed, albeit in a single sentence;[22] in the context of Freight Express' limited application, the ICC maintains, the applicant's statement was sufficient.

■ Although Freight Express' "statement" concerning the statutory factors was terse and entirely conclusory, the ICC did not act arbitrarily in granting Freight Express' application without insisting on more detailed remarks. The scope of the application was narrow. The carrier evidently relied on, and the ICC applied, 49 C.F.R. §§ 1137.20, .24, which announced the ICC's view that, "under normal circumstances," site territorial designations will be found "excessively narrow, wasteful of fuel, inefficient, or contrary to the public interest." That guideline is so obviously reasonable that its uncritical application cannot be termed arbitrary.[23]

---

21. McAdams also questioned the adequacy of this aspect of the application before the Agency; the ICC found that Freight Express had sufficiently addressed the statutory factors. App. 53–54.

22. Freight Express' application stated: "Approval of the Application will permit Applicant to provide a more responsive service to the shipping public, particularly in small or rural communities, and allow the most productive use of equipment and enegery [sic]." App. 3.

23. Legislative history supports the ICC's view that site-to-county territorial expansion will further the goals of the 1980 legislation. "The elimination of an excessively narrow territorial restriction, such as [a plantsite designation] . . . could be accomplished by granting authority to transport from the county instead of from, simply, the plantsite within the county." 126 Cong.Rec. H5410 (daily ed. June 19, 1980) (remarks of Representative Howard).

CONCLUSION

Since McAdams has alleged that it operates in direct competition with Freight Express in the territorial region in question, McAdams has standing to challenge in court the ICC's grant of expanded operating authority to Freight Express.

The ICC is required to determine that applicants are fit to provide the additional service that will be authorized by restriction removal, but the Commission need examine only questions of fitness linked specifically to the expansion requested. Generic guidelines may be used to support an inference of fitness from prior operating experience or certificates already issued. The ICC's site-to-county restriction removal guideline reasonably grounds fitness to serve a county on a prior finding of fitness to serve a site within the county. It is not, however, reasonable to find a carrier fit to serve Hawaii merely on the ground that it has demonstrated fitness to serve the continental United States.

The site-to-county guideline also embodies a reasonable finding that the restriction removals it permits will promote fuel and cost savings and enhance service to small and rural shippers. For the limited purposes of its application to replace site designations with county-wide territories in its certificate, Freight Express adequately described the effect of these statutory factors.

The ICC's decision is affirmed in principal part. The Commission's order is vacated only insofar as it grants Freight Express authority to serve Hawaii.