**ERICKSON TRANSPORT CORP.,**
Petitioner,

v.

**INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.**

No. 83–1875.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 16, 1983.

Decided June 29, 1984.

John E. Jandera, Jandera, Gregg & Barker, Topeka, Kan., for Erickson Transport Corp.

John Broadley, Gen. Counsel, Henri F. Rush, Associate Gen. Counsel, Dennis J. Starks, Atty., I.C.C., Washington, D.C., for respondents.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Erickson Transport Corp. (Erickson) petitions this court to review and set aside an order of the Interstate Commerce Commission (ICC) granting L & L Trucking, Inc. (L

& L), a certificate to operate as a motor common carrier transporting specific commodities between several Arkansas counties and other points in the United States. For reversal Erickson argues that the ICC erred in refusing to impose a bulk restriction on the grant of authority because L & L failed to specifically demonstrate that it is fit, willing, and able to transport food and related products in bulk form. We agree. For the reasons discussed below, we vacate that part of the ICC's order and remand for issuance of authority restricted to non-bulk hauling.

The basic facts in this case are not in dispute. On November 8, 1982, pursuant to the governing regulations, L & L filed an application with the ICC requesting authority to engage in operations as a motor common carrier to transport food and related products between certain designated locations. This was L & L's first request for authority as an ICC regulated carrier.[1]

L & L's application was supported by Riceland Industries of Stuttgart, Arkansas (Riceland), a large producer and distributor of soybean salad oil and rice. In the past L & L has satisfactorily transported exempt commodities for Riceland. Riceland stated that it expected to tender L & L rice and liquid salad oil in packaged, non-bulk forms. Neither L & L nor Riceland specifically mentioned bulk hauling. L & L does not operate any equipment suitable for transporting the specified commodities in bulk form.[2]

Erickson, an authorized motor common carrier, currently provides bulk transportation service to Riceland. Pursuant to the provisions of 49 U.S.C. § 10922(b)(7), Erickson challenged the proposed grant of unrestricted authority to L & L, urging that the ICC limit L & L's grant of authority to non-bulk hauling of specific commodities.

In response to Erickson's protest, L & L opposed the imposition of the bulk restriction, although stating that it had absolutely no intention to engage in bulk operations.

On March 2, 1983, an ICC review board approved L & L's application, granting it authority "[t]o operate as a *common carrier*, by motor vehicle, in interstate or foreign commerce, over irregular routes, transporting *food and related products*, between points in Craighead, Phillips and Arkansas Counties, AR, on the one hand, and, on the other, points in the United States (except Alaska and Hawaii)." *L & L Trucking, Inc.*, No. MC–163664 at Appendix (ICC, Feb. 25, 1983) (emphasis in original). Erickson's request for an administrative appeal was denied and a final order was entered granting L & L the unrestricted authority it sought. Erickson petitions this court for judicial review of the ICC's refusal to impose a bulk restriction on L & L's authority.

 The Motor Carrier Act of 1980, 49 U.S.C. § 10922(b)(1)(A), (B) (1980), states that a Certificate of Public Convenience and Necessity may only be issued if the ICC finds that the applicant is "fit, willing, and able to provide the transportation to be authorized" and "that the service proposed will serve a useful public purpose, responsive to a public demand or need." The applicant bears the initial burden of establishing its fitness, willingness, and ability to provide the proposed service. *See Erickson Transport Corp. v. ICC*, 728 F.2d 1057, 1063 (8th Cir.1984); *Port Norris Express Co. v. ICC*, 697 F.2d 497, 500 (3d Cir.1982) (*Port Norris II*)[3]; *American Trucking Associations, Inc. v. ICC*, 659

---

**1.** 49 U.S.C. § 10526(a)(6)(B) (Supp.IV 1980) exempts transportation of agricultural products from ICC regulation. At the time of its motor common carrier application, L & L transported rice, an exempt commodity for several Arkansas shippers.

**2.** Operating as an exempt commodities transporter, L & L permanently leased fifty tractor trailer units, primarily "dry" box vans, with a

few refrigerated units as well. These units are only suitable to carry pre-packaged products, i.e. non-bulk forms of the specified commodities.

**3.** Port Norris Express Co., a regulated carrier, filed several independent actions protesting broad motor common carrier authorizations granted by the ICC to competing carriers.

F.2d 452, 469 (5th Cir.1981) (*ATA*), enforced by mandamus, 669 F.2d 957 (1982), cert. denied, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983). In addition, the applicant must present a *prima facie* case of public need or demand for the proposed service and that the proposed service will advance a useful public purpose. *Erickson Transport Corp. v. ICC*, 728 F.2d at 1063–64; *Port Norris II*, 697 F.2d at 500. Once the applicant has sustained its initial burden, the burden of proof then shifts to the protestant to show that the issuance of the certificate is inconsistent with public convenience and necessity. *See Erickson Transport Corp. v. ICC*, 728 F.2d at 1064; *Refrigerated Transport Corp. v. ICC*, 709 F.2d 1430, 1432 (11th Cir.1983). However, the protestant has no obligation to offer any evidence in opposition to the application until the applicant meets its initial burden. *Port Norris Express Co., Inc. v. ICC*, 729 F.2d 204, 208 (3d Cir.1984) (*Port Norris III*).

Erickson argues that because L & L failed to sustain its initial burden of proof by failing to present any evidence of its fitness, willingness, or ability to transport bulk commodities, the ICC erred in refusing to impose a bulk restriction on L & L's motor common carrier certificate.

In *ATA*, the court held that the applicant must make a separate showing of fitness, willingness, ability, and public need for bulk hauling of *general* commodities because "[b]ulk service requires special equipment, such as tank trucks, that many carriers do not have. Moreover, as pointed out by opponents to the Commission's statement, most carriers are not fit to provide bulk service because they will not have the proper cleaning facilities for tank trucks ...." 659 F.2d at 473 (footnotes omitted). In *Port Norris Express Co. v. ICC*, 687 F.2d 803 (3d Cir.1982) (*Port Norris I*), the court recognized that although the Motor Carrier Act of 1980 was designed to facilitate carrier entry into the trucking industry, the Act was not intended to entirely deregulate motor carrier entry. The court held that the ICC may not issue bulk hauling authorities for general com-

modities solely on policy grounds, but instead must articulate a factual basis for its decision based on record evidence. *Id.* at 809. Specifically, the ICC "may not issue a certificate unless there is evidence of the applicant's present intent to haul bulk, evidence that the applicant has or intends to acquire the necessary equipment, and evidence of public demand for bulk hauling." *Port Norris III*, 729 F.2d at 208, citing *Port Norris I*, 687 F.2d at 811–13.

As it argued in *Port Norris III*, the ICC argues that *ATA* and *Port Norris I* are only applicable to *general* commodity applications, urging that there are special safety, equipment, cleaning, and insurance concerns where the description of the commodity is general and its identity unknown. *See Port Norris III*, 729 F.2d at 208. Undeniably, some of the same concerns are relevant to bulk hauling of food products. Accordingly, the Third Circuit in *Port Norris III* concluded that *ATA* and *Port Norris I* were equally applicable to grants of bulk authority for specific commodities. *Id.*

■ Nonetheless, the ICC raises several arguments to distinguish *Port Norris III* from the present case. The ICC argues that the record demonstrates L & L's willingness to provide bulk hauling because L & L vehemently opposed the imposition of a bulk restriction on its authority. Although it is true that in *Port Norris III* the applicant informed the ICC that it had no objection to the bulk restriction, mere opposition to the imposition of a restriction does not demonstrate willingness. In response to Erickson's objection to the broad grant of authority and throughout these proceedings, L & L has consistently stated that it has absolutely no intention of providing bulk transportation service. Erickson argues that L & L opposed the restriction not only because it was desirous of the broad grant of authority, but also because it felt compelled to do so by ICC policy, lest its application be denied. We agree. Neither L & L nor the ICC points to language in L & L's application expressing an interest in

bulk authority. In fact, L & L's own words confirm Erickson's position that L & L is unwilling to provide bulk service, but nevertheless sought unrestricted authority in order to comport with ICC policy:

We submit that the essence of the Fifth Circuit Decision [i.e. *ATA* ] also affirms the use of the Standard Transportation Commodities Codes which the Interstate Commerce Commission utilizes. In and among these codes is a recognition that the commodity descriptions shall not be fragmented by imposing restrictions. Indeed, the rulemaking proceeding in Ex-Parte MC–55 (Sub No. 43) specifically interpreted the Motor Carrier Act of 1980 as disapproving of fragmenting operating authority.

In addition to the legal issues involved herein, we would point out that there is absolutely no intention on the part of the applicant to engage in a bulk operation. Thus, there is no potential harm that could follow from a complete grant of the authority that is requested. *The applicant is merely following established ICC guidelines in seeking a complete STCC commodity description.*

Response of L & L to Protest, *L & L Trucking, Inc.*, No. MC–163664 (ICC, Feb. 25, 1983) (emphasis added). An applicant's acquiescence will not be considered as evidence of willingness to provide the entire range of services sought where it appears that the applicant applied for such broad authority because it felt compelled to do so by ICC policy. *See Port Norris III*, 729 F.2d at 208; *Port Norris II*, 687 F.2d at 812; *ATA*, 659 F.2d at 473.

 The ICC also argues that although no specific finding of fitness to haul bulk commodities was made, such fitness is supported by evidence of L & L's fitness to haul specific commodities in non-bulk form. The Third Circuit specifically rejected this same argument in *Port Norris III*, 729 F.2d at 208:

The ICC argues that the grant of bulk hauling authority was supported by evidence of Allen's fitness to haul the particular commodities in non-bulk form. Acceptance of this argument would effectively overrule our holding in *Port Norris I* that an applicant for bulk hauling authority is required by 49 U.S.C. § 10922(b)(1) to offer evidence of its fitness to provide that particular service.

Here, as in *Port Norris I,*

[i]t is undisputed that at the time of its application [the applicant] lacked bulk capability. Any finding of fitness therefor would depend on a finding that [the applicant] is willing to acquire the necessary equipment. If there is insufficient evidence of willingness to transport in bulk, then under the facts of this case there is also insufficient evidence of fitness.

687 F.2d at 813. In light of our earlier discussion concerning the ICC's failure to specifically find, based on record evidence, that L & L is willing to provide bulk service, there cannot be sufficient evidence that L & L is fit and able to transport bulk commodities. Therefore, we hold that L & L has failed to demonstrate by substantial evidence that it is fit, willing, and able to transport food and related products in *bulk* form as required by current case law interpreting the applicable statutes and regulations. Accordingly, we vacate that part of the ICC's order and remand for issuance of motor common carrier authority restricted to non-bulk hauling. *See Port Norris III*, 729 F.2d at 209.[4]

**4.** It is unnecessary to decide whether L & L presented sufficient evidence of public need for bulk service.