**PORT NORRIS EXPRESS COMPANY, INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 83–1929.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1984.

Decided Jan. 18, 1985.

Before TAMM and EDWARDS, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge TAMM.

Dissenting opinion filed by Senior Circuit Judge MacKINNON.

TAMM, Circuit Judge:

Port Norris Express Company (Port Norris) petitions this court to vacate an order of the Interstate Commerce Commission (Commission) granting motor common carrier authority to David Beneux Produce & Trucking, Inc. (Beneux). Port Norris argues that the Commission granted Beneux authority to transport general commodities in bulk form without the requisite evidentiary showing by Beneux that it was fit, willing, and able to provide such services. For the reasons discussed below, we remand the Commission's order with directions to impose a bulk restriction on Beneux's authority.

## I. BACKGROUND

Beneux filed an application with the Commission in February 1983 requesting authority to transport general commodities throughout the continental United States. Appendix (App.) at 1–35. Under the Commission's classification system, authority to transport general commodities includes the right to transport bulk commodities,[1] household goods, and explosives unless specifically excepted from the grant. Beneux's application excepted household goods and explosives, but not bulk commodities. Beneux held existing certificates authorizing it to engage in operations in 48 states, including five certificates authorizing it to transport general commodities radially.[2] By its application, Beneux sought to round out its fragmented authority. With general commodities authority, it could lessen or eliminate deadhead mileage by seeking backhaul loads.

William P. Jackson, Jr., Washington, D.C., with whom David C. Reeves, Arlington, Va., was on the brief, for petitioner.

Dennis J. Starks, Atty., I.C.C., Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., John Broadley, Gen. Counsel, I.C.C., Robert B. Nicholson, and Margaret G. Halpern, Attys., U.S. Dept. of Justice, Washington, D.C., were on the brief, for respondent.

1. Bulk service is the transportation of fungible commodities that can be poured, scooped, or shoveled, and which generally are of such size that they cannot be handled piece by piece. The term "in bulk" commonly refers to a loose mass that is poured or thrown into a vessel or vehicle without regard to order, and which is restrained during transportation only by the sides of the carrying vessel. *Steere Tank Lines, Inc. v. ICC,* 666 F.2d 255, 257–58 n. 3 (5th Cir.1982), *cert. denied,* 460 U.S. 1025, 103 S.Ct. 1264, 75 L.Ed.2d 499 (1983). Bulk service may require special equipment and expertise. *American Trucking Ass'n v. ICC,* 659 F.2d 452, 473 (5th Cir.1981), *enforced by mandamus,* 669 F.2d 957 (5th Cir. 1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).

2. Radial authority, also known as facilities authority, is "authority to travel to and from a hub." *RTC Transportation, Inc. v. ICC,* 731 F.2d 1497, 1500 (11th Cir.1984).

Beneux's application consisted of the standard application form, the verified statement of its president, two exhibits setting forth its existing authorities, and the statements of three supporting shippers. The application indicated that Beneux operated seventy diesel tractors and seventy-five high-cube trailers equipped with refrigeration units. Beneux stated that it had the financial ability to acquire additional equipment to meet the needs of its shippers and the expertise to move any type of commodity throughout the United States. The supporting shippers were Seneca Foods Corporation (desiring transportation of foodstuffs, materials, equipment, and supplies used in the manufacturing and distribution of foodstuffs), Coleco Industries, Inc. (plastic games and toys), and National Spinning Co., Inc. (yarn wool and synthetic fiber yarns).

Port Norris, a common carrier specializing in the transportation of bulk commodities, filed a protest to Beneux's application in March 1983. App. at 36–64. It argued that granting Beneux's application would adversely affect Port Norris's operations to an extent contrary to the public interest and that Beneux had failed to satisfy the statutory requirements for a grant of unrestricted general commodities authority. Port Norris sought either a complete denial of the application or a bulk restriction. Beneux responded to Port Norris's protest by requesting that the Commission amend Beneux's application to include a restriction against bulk commodities. App. at 65.

In June 1983, the Commission's Review Board[3] granted Beneux's application without any bulk restriction. App. at 66–70. Port Norris appealed, and the Commission, Division 1, affirmed the Review Board's decision. App. at 84. In August 1983, the Commission granted Beneux a certificate of public convenience and necessity to operate as a common carrier transporting general commodities with no bulk restriction. App. at 86–87. Port Norris petitioned this

court for review pursuant to 28 U.S.C. §§ 2321, 2342(5) (1982).

## II. Discussion

### A. Legal Framework

The scope of our review of a Commission order granting a certificate of public convenience and necessity to a motor common carrier is defined by the Motor Carrier Act of 1980, 94 Stat. 793 (1980) (codified at scattered sections of 49 U.S.C. (1982)) [the MCA], and the Administrative Procedure Act. The MCA requires the Commission to determine whether an applicant has shown that it is "fit, willing, and able to provide the transportation to be authorized by the certificate" and that the service proposed will be "responsive to a public demand or need."[4] 49 U.S.C. §§ 10922(b)(1)(A), (B) (1982). Under the Administrative Procedure Act, the Commission's decision to grant the authority "may not be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' and must be supported 'by substantial evidence.'" *Port Norris Express Co. v. ICC,* 746 F.2d 69, 71 (D.C.Cir.1984) (quoting 5 U.S.C. §§ 706(2)(A), (E) (1982)). The "'substantial evidence examination looks to whether the record, taken as a whole, contains such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Department of Transportation, Federal Highway Administration v. ICC,* 733 F.2d 105, 110 (D.C.Cir.1984) (citations omitted).

The case law unequivocably establishes that under the MCA an applicant for unrestricted general commodities authority has the burden of establishing that it is fit, willing, and able to provide *all* of the transportation to be authorized by the certificate—including bulk services. In *American Trucking Association v. ICC,* 659 F.2d 452 (5th Cir.1981), *enforced by mandamus,* 669 F.2d 957 (5th Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983) [*ATA*], the Fifth Circuit rejected

---

**3.** Under 49 U.S.C. §§ 10304–10305 (1982) the Commission may delegate its power to render decisions to boards composed of at least three employees.

**4.** Port Norris does not challenge the Commission's finding that granting Beneux unrestricted general commodities authority was responsive to a public need. Accordingly, we do not ad-

dress that issue. We do note for the purposes of discussing the Commission's fit, willing, and able determination, however, that none of the supporting shippers mentioned a need for bulk service. As we point out below, the lack of any indication of need for bulk service undercuts the Commission's inferences that Beneux was fit and willing to provide such service.

the Commission's decision to eliminate all bulk restrictions from authorities to transport general commodities.[5] In doing so, the court held that an applicant for general commodities authority must demonstrate specifically that it is fit, willing, and able to provide bulk transportation services, *ATA*, 659 F.2d at 473. In *Port Norris Express Co. v. ICC*, 687 F.2d 803, 811 (3d Cir.1982) [*Port Norris-Dennis*], the Third Circuit adopted the Fifth Circuit's analysis and vacated the Commission's order granting an applicant general commodities authority because the "record ... [could not] support a finding that [the applicant] was willing to carry commodities in bulk." In *Port Norris Express Co. v. ICC*, 729 F.2d 204, 208 (3d Cir.1984) [*Port Norris-Allen*], the Third Circuit stated specifically that the Commission may not issue an unrestricted general commodities certificate "unless there is record evidence of the applicant's present intent and willingness to haul bulk ... [and] record evidence that the applicant has or intends to acquire the necessary equipment."

■ Recent cases dealing with grants of *specific* commodities authority have reaffirmed the *ATA* and *Port Norris-Dennis* holdings.[6] In *Port Norris-Allen*, 729 F.2d 204 (3d Cir.1984), *Steere Tank Lines, Inc. v. ICC*, 736 F.2d 1094 (5th Cir.1984) [*Steere-C.D.B.*], and *Erickson Transport Corp. v. ICC*, 737 F.2d 775 (8th Cir.1984) [*Erickson-L & L*], the Third, Fifth, and Eighth Circuits, respectively, rejected the Commission's policy of refusing to include bulk restrictions on grants of specific commodities authority. Each court emphasized that the Commission may not grant an applicant bulk authority unless there is substantial evidence that the applicant is fit, willing, and able to provide bulk servic-

es. *See Port Norris-Allen*, 729 F.2d at 208; *Steere-C.D.B.*, 736 F.2d at 1096; *Erickson-L & L*, 737 F.2d at 778. We recently applied "substantially the same reasoning," *Port Norris Express Co. v. ICC*, 746 F.2d 69, 73 (D.C.Cir.1984) [*Port Norris-D-X*], in holding that the Commission may not grant authority to transport specific commodities in bulk unless the applicant provides evidence of public need for bulk services.[7] In *Port Norris-D-X*, we rejected "the use of an evidentiary inference to satisfy the clear requirements of the [MCA]." *Id.* at 72. Although the Commission may make reasonable inferences in determining whether applicants have met the statutory requirements, those inferences must be supported by "direct evidence." *Id.* at 73. Specifically, where a certificate includes bulk authority, "[s]ome direct evidence on bulk service is required." *Id.* Absent such evidence, a certificate granting general commodities authority must contain a bulk restriction.

### B. *The Evidence*

Beneux's application—including the shipper support statements—made no mention of bulk transportation or bulk commodities, nor did it show that it operated any bulk equipment or facilities. The Commission nevertheless determined that Beneux was fit, willing, and able to transport bulk commodities by resorting to inferences drawn from the application and a "review of Commission records." App. at 66. The Commission contends in this appeal that its determinations are supported by the "doctrine of representative evidence." Brief for Respondents at 16. Under that "doctrine," the Commission argues, "there was enough evidence to support a Commission *inference* ... that Beneux was fit to trans-

---

**5.** The Commission views bulk restrictions as inconsistent with the purposes of the MCA. Following passage of the MCA it issued rules and policy statements consistent with that view. Those rules and policy statements were the subject of review in *ATA*.

**6.** We are aware of no authority departing from the evidentiary requirement set forth in *ATA* and *Port Norris-Dennis*. Apparently, however, the Commission either does not fully comprehend or it does not fully accept this well-established requirement. Although it correctly acknowledges that an applicant has the burden of establishing a prima facie case of fitness and need with respect to the transportation to be

provided under the certificate, Brief for Respondents at 15, it immediately dismisses as "ill-conceived" Port Norris's argument that "Beneux had to demonstrate separately that it was fit specifically to transport general commodities in bulk form." *Id.* Under *ATA, Port Norris-Dennis,* and their progeny, that was precisely Beneux's burden under its initial application for general commodities authority.

**7.** Although *Port Norris-D-X* involved the public need prong of § 10922(b)(1), we explicitly recognized that our reasoning applies equally to the fit, willing, and able prong. *Port Norris-D-X*, 746 F.2d at 73.

port general commodities in bulk." *Id.* (emphasis added). As we discuss below, we find the Commission's argument unpersuasive because there was not substantial evidence that Beneux was either fit or willing to transport bulk commodities.

### 1. Fitness

Beneux included in its application a list of five certificates that authorized it to transport general commodities. App. at 25. The Commission found that two of those certificates did not contain bulk restrictions.[8] From that fact, the Commission inferred that Beneux had "been found fit in other proceedings to handle bulk traffic." App. at 68. It is entirely possible, given the Commission's opposition to bulk restrictions, that the prior proceedings involved no separate finding that Beneux was fit to handle bulk commodities. Moreover, even if those proceedings did involve such a finding, the record in *this* case does not contain any facts supporting the Commission's inference. We therefore reject the Commission's inference as unsupported by substantial evidence.

The Commission argues that our holding in *B.J. McAdams, Inc. v. ICC,* 698 F.2d 498 (D.C.Cir.1983), supports its conclusion that based on Beneux's existing authority it was fit to transport general commodities in bulk. The Commission granted the applicant in that restriction removal proceeding[9] broadened territorial authority. Competing carriers argued that the applicant was not fit to operate under not only the enlarged authority, but the original grant as well. In rejecting petitioners' challenge, we held that "the ICC may assume, for the purposes of [a] *restriction removal proceeding,* that the applicant is fit to operate

under the authority previously granted to it." *Id.* at 503 (emphasis added).[10]

 The Commission recognizes that *B.J. McAdams* did not involve an application for a new certificate but argues that the principle expressed in that case should apply equally here since Beneux was "in substance, simply seeking an incremental territorial expansion of its already broad general commodities authority. Brief for Respondents at 18 n. 6. We agree that the scope of an applicant's existing authority may be relevant in determining whether it is fit to provide the services requested in its application for a new certificate. If the new certificate includes bulk authority, however, there must be direct evidence in the record showing that the applicant either provides bulk service under existing authority, *see, e.g., Port Norris Express Co. v. ICC,* 697 F.2d 497 F.2d (3d Cir.1982) [*Port Norris-Allied*] (applicant specifically requested bulk authority, submitted evidence that it provided intrastate bulk services under existing authority, and that it had bulk equipment), and *Provost Cartage Inc. v. ICC,* 686 F.2d 221 (5th Cir.1982) (applicant specifically requested bulk authority, under existing certificates it had transported over 1000 bulk commodities, and it had bulk vehicles and facilities), or that the Commission determined in prior proceedings that the applicant is fit, willing, and able specifically to provide bulk service.[11]

The record before us contains no such evidence, notwithstanding the Review Board's conclusory statement that Beneux "has the capacity to transport certain bulk commodities like resin solutions and flammable liquid and/or petroleum products." App. at 66. Each of those commodities

---

**8.** The Commission states in its brief that none of Beneux's five general commodities certificates contained bulk restrictions. Brief for Respondents at 16. The record, however, includes a finding that only two of the certificates contained no bulk restrictions. Appendix (App.) at 66. Although it has no effect on our holding, we rely on the record, not the brief.

**9.** The MCA provides for two types of proceedings, both intended to replace narrow, highly specific certificates with broader authority. Restriction removal proceedings deal with the removal of operating restrictions from existing certificates. 49 U.S.C. § 10922(h). New certificate proceedings deal with applications for entirely new certificates. 49 U.S.C. § 10922(b).

**10.** In *B.J. McAdams,* we expressly recognized the distinction between the Commission's fit-

ness inquiry in restriction removal proceedings involving minor expansions of authority on the one hand and new certificate proceedings on the other. 698 F.2d at 503 ("If the expansion is major, the fitness inquiry should be comparable in scope to the inquiry that would be made if the applicant were applying for a new certificate.").

**11.** If the Commission relies on a prior determination, it must include in the record of the new certificate proceedings the *facts* which formed the basis for that determination. The burden this places on the Commission is slight, and it prevents situations like that before us in which there is no way to determine from the record whether the prior proceedings involved any findings at all relating to the fit, willing, and able requirement.

may move in either non-bulk or bulk form.[12] The Commission's argument that they "typically move in bulk form," Brief for Respondents at 17, is in itself an indication that the Review Board's finding on bulk capacity was an inference, not a factual determination. Indeed, the Commission conceded at oral argument that nothing in the record indicates that Beneux has ever transported any bulk commodities. In the absence of any evidence supporting the Commission's inference, we are unable to conclude that the record, taken as a whole, is adequate to support its conclusion.[13]

The Review Board also stated that Beneux "operates equipment which is conducive to handling bulk shipments." App. at 68. The only record evidence relating to equipment demonstrates that Beneux operates seventy-five van-type trailers equipped with refrigeration units. Because such vans are not bulk transportation equipment,[14] we reject the Commission's conclusion.

Although an applicant need not possess bulk equipment at the time of application, *Steere-C.D.B.*, 736 F.2d at 1096, the applicant still must provide some evidence of its intent or willingness to acquire such equipment. *Id.* The Commission argues that Beneux's statements that it has the expertise to move any type of commodity and that it is willing and able to acquire additional equipment to meet shipper demands satisfy this evidentiary requirement. The Commission would infer from Beneux's statements the willingness to acquire bulk equipment to meet a shipper's request for bulk services. That such a request would be made, moreover, requires a further inference because not one of the three supporting shippers mentioned any need for bulk service. Once again, we cannot accept the Commission's position because it is based entirely on inferences.

### 2. *Willingness*

Even if the record supported the Commission's determination that Beneux was fit to transport bulk commodities, we are still compelled to remand because there is not substantial evidence in the record to show that Beneux was willing to provide bulk services under the new certificate. The Commission contends that Beneux's initial application combined with its expertise and willingness to acquire additional equipment is sufficient evidence of willingness.

Beneux did not seek a bulk restriction in its initial application. "Whatever slight evidence of willingness," *Port Norris-Dennis*, 687 F.2d at 812, that fact provides, however, fades into oblivion upon an examination of the record as a whole. The Commission can point to no language in Beneux's application that shows any interest in bulk authority. *See Erickson-L & L*, 737 F.2d at 777–78; *Port Norris-Dennis*, 687 F.2d at 812. Moreover, as discussed above, Beneux's general statements concerning its expertise and willingness to acquire additional equipment are insufficient absent "some direct evidence on bulk service." [15] *Port Norris-D-X*, 746 F.2d at 73.

Furthermore, Beneux requested that the Commission amend its application to include a bulk restriction. The Commission rejected the proposed amendment on the grounds that it was "presumably ... an attempt merely to eliminate opposition," and therefore not in the public interest. App. at 84. Even if we agreed with the Commission, the record still lacks substantial evidence that would support a finding that Beneux was willing to transport bulk commodities. By rejecting Beneux's amendment, the Commission merely ignored evidence rebutting its inference of willingness. As we pointed out above, that inference is not supported by substantial

---

**12.** *Cf. Steere-C.D.B.*, 736 F.2d at 1095 (application for authority to transport, among other commodities, chemical and petroleum products, except in bulk).

**13.** If the Commission based its conclusion on an inference that because Beneux had the capacity to transport the specified commodities in non-bulk, it therefore had the capacity to transport those same commodities in bulk form, that inference is foreclosed by *Port Norris-Allen*, *Steere-C.D.B.*, and *Erickson-L & L*.

**14.** The Commission essentially concedes this point by not even attempting to rebut the petitioner's argument, Brief for Petitioner at 16,

that Beneux operates no bulk equipment. *See also Erickson-L & L*, 737 F.2d at 776 n. 2 (vans not suitable to carry bulk commodities); *Steere-C.D.B.*, 736 F.2d at 1095 (non-bulk applicant operated all "van-type" vehicles); *RTC Transportation, Inc. v. ICC*, 731 F.2d 1497, 1499–1500 (11th Cir.1984) (contrasting bulk equipment with vans).

**15.** *Cf. Port Norris-Allen*, 729 F.2d at 211 ("Construing the application in light of the shipper support statements requesting bulk service, ... we believe that [the applicant] may fairly be said to have applied for bulk as well as non-bulk authority, and that [the applicant] was therefore 'willing' to provide bulk service.").

evidence, so even unrebutted it does not satisfy the statutory requirement.

On the other hand, the lack of any direct evidence of willingness rebuts the Commission's presumption that the proposed amendment was "an attempt merely to eliminate opposition." [16] *Id.* The circumstances of this case therefore suggest that Beneux's requested amendment "was not prompted by a desire to settle litigation with a protesting carrier, but rather by a genuine lack of interest in bulk hauling." *Port Norris-Allen,* 729 F.2d at 210. Thus, considering the record as a whole, including Beneux's requested amendment, the Commission's determination that Beneux was willing to transport bulk commodities is not supported by substantial evidence.

### III. Conclusion

■ It should be clear by now that we will continue to insist that the Commission perform its duty in determining whether applicants have met the requirements of section 10922(b)(1). As we stated in *Port Norris-D-X,* 746 F.2d at 73, "[i]f the various circuits have misapprehended what appears to be the plain meaning of [the MCA], then Congress can easily correct the error. Until such time, it seems very little to ask that an applicant present some bare minimum of direct evidence" that it is fit, willing, and able to transport commodities in bulk before it is granted authority to do so.

For these reasons, we remand this proceeding to the Commission with instructions to revise Beneux's certificate so as to exclude authority to transport commodities in bulk.

*So ordered.*

MacKINNON, Senior Circuit Judge (dissenting):

The majority's opinion represents another attack on the ability of the Interstate Commerce Commission to make reasonable inferences on the basis of representative evidence. *Port Norris Express Co., Inc. v. ICC,* 746 F.2d 69 (D.C.Cir.1984) [*Port Norris-DX*] attacked the use of representative evidence to show public need, and the majority in this case would extend that holding as well to the fitness and willingness prongs of the Motor Carrier Act of 1980, 49 U.S.C. § 10922(b)(1), 94 Stat. 793 (1980).

In this case, the familiar Port Norris Express Company (Port Norris) petitions this court to vacate an order of the Commission granting motor common carrier authority to David Beneux Produce & Trucking, Inc. (Beneux) to transport general commodities without a bulk restriction. Port Norris responded to Beneux's application to the Commission by filing a protest, arguing that broadening Beneux's authority would adversely affect Port Norris' operation and thus would naturally be contrary to the public interest, and sought either a complete denial of the application or an amendment to Beneux's application to include a restriction against bulk commodities. After an appeal from Division I, the Commission granted Beneux a certificate with no bulk restriction.

While the seeds of the majority's opinion were sown in dicta in *Port Norris-D-X,* at 73, it still rests uneasily along side earlier decisions of this court. *B.J. McAdams, Inc. v. ICC,* 698 F.2d 498 (D.C.Cir.1983) for example held that the ICC may assume, for the purposes of a restriction removal proceeding, that the applicant is fit to operate under the authority previously granted to it. *Id.* at 503. This case, however, involves a rounding out of authority difficult to distinguish in substance from the facts of *B.J. McAdams. B.J. McAdams* involved the lifting of an *area* restriction, while the rounded out authority in this case would also have allowed Beneux to operate in a broader area. J.A. 10–11. To allow the Commission to infer fitness in one procedural setting, but not another, where there is little perceptible difference in the actual expansion of authority requested, elevates form over substance. Moreover, the requirement that "[i]f the Commission relies on a prior determination, it must include in the record of the new certificate proceedings the facts which formed the basis for that determination," see Majority Opinion at 1285 n. 14, is entirely unprecedented. Such a rule in effect prohibits the Commission from relying on prior determinations at all.

The majority opinion will also, like *Port Norris-D-X,* lay the foundation for a conflict among the circuits. Two of the circuit court decisions relied on in *Port Norris-D-X* did not foreclose the Commission from adopting rules providing for the issuance of specified commodity authority that is not

---

**16.** We agree that in appropriate circumstances the Commission may ignore restrictive amend-

ments. *See Port Norris-Allen,* 729 F.2d at 210.

restricted against bulk transportation. *Port Norris Express Co. v. ICC,* 729 F.2d 204, 208 n. 1 (3d Cir.1984) (*Port Norris-Allen*); *Steere Tank Lines, Inc. v. ICC,* 736 F.2d 1094, 1097 (5th Cir.1984). With this prompting, the Commission undertook in July, 1984 two rulemaking proceedings to consider when it is appropriate to include or exclude bulk restrictions on various specific commodity licenses. See *Acceptable Forms of Request for Operating Authority,* Ex Parte No. 55 (Sub-No. 43A) and *Removal of Restrictions From Authorities of Motor Carriers of Property,* Ex Parte No. MC–142 (Sub-No. 1), 49 Fed.Reg. 27182 (July 2, 1984). The factual record developed in those proceedings may indicate no significant dissimilarities between bulk and nonbulk transportation of particular commodity groups. For these commodities, inferences as to need, fitness, and willingness to transport in bulk from authority to transport in non-bulk would be completely reasonable. By laying down a broad rule that would effectively preclude the Commission from applying in future cases evidence developed in the pending rule-making, the majority prevents the Commission from furthering the purposes of the 1980 Act.[1] The inability to make reasonable inferences will unnecessarily encumber the Commission, which must pass on many thousands of applications each year. *See* Interstate Commerce Commission 1983 Annual Report at 103.

The majority also unjustifiably dismisses the Commission's argument that Beneux's statements that it has the expertise to move any type of commodity, and that it was willing to acquire any equipment to do so, satisfies the requirement that an applicant provide some evidence of its intent or willingness to transport in bulk. The majority reasons that Beneux's statement of willingness to acquire any equipment implies willingness to acquire bulk equipment only if there is direct evidence of need for bulk service in the supporting shipper's statements. This does not make sense. By "any equipment," the applicant should be taken to mean just that, including bulk equipment. Requiring direct evidence of *need* before the Commission can take an applicant's statement of *willingness* at face value places a gratuitous obstacle in the way the Commission's fulfilling its mandate in the 1980 Act to broaden categories of property authorized by carriers' certificates. Moreover, this case represents just the sort of circumstances under which the Commission may ignore restrictive amendments. *See Port Norris-Allen,* 729 F.2d at 210. Faced with the opposition of a constant litigant, the applicant simply asked for a restrictive amendment. For the above reasons, I respectfully dissent.

---

1. In *Port Norris Express Co., Inc. v. ICC,* 728 F.2d 543 (D.C.Cir.1984) this court recognized that the directive of the 1980 Act, in 49 U.S.C. 10922(i)(1)(B)(i), to "reasonably broaden the categories of property authorized by the carrier's certificate or permit" logically implies that new certificates should be "'reasonably broaden[ed]' beyond prior practice as well." 728 F.2d at 545.